George **FELDMAN**, as **Trustee in Bankruptcy of Leasing Consultants Incorporated, Bankrupt, Plaintiff-Appellant,**

v.

**TRANS–EAST AIR, INC., et al., Defendants-Appellees.**

**No. 652, Docket 73–2464.**

United States Court of Appeals, Second Circuit.

Argued March 13, 1974.

Decided May 7, 1974.

George A. Hahn, New York City (Daniel A. Zimmerman and Hahn, Hessen, Margolis & Ryan, New York City, on the brief), for plaintiff-appellant.

Anthony L. Tersigni, New York City (Robert E. Helpern and Aranow, Brodsky, Bohlinger, Benetar & Einhorn, New York City, on the brief), for defendant-appellee Castle Capital Corp.

Matthew Gluck, New York City (Dennis C. Krieger and Fried, Frank, Harris, Shriver & Jacobson, New York City, on the brief), for defendant-appellee Hudleasco, Inc.

Before HAYS and TIMBERS, Circuit Judges, and DAVIS,* Judge.

HAYS, Circuit Judge:

Appellant George Feldman, as trustee in bankruptcy of Leasing Consultants

---

* The Honorable Oscar H. Davis, of the Court of Claims, sitting by designation.

Incorporated (LCI), commenced this action to vacate an order of the referee in bankruptcy under which leases on three airplanes were disaffirmed. The trustee sought to recover possession of and title to the airplanes, and to recover all rentals obtained on the airplanes by appellees during their possession. The referee refused to vacate his order and dismissed the remainder of appellant's application for want of summary jurisdiction.

Appellant then brought a petition for review before the United States District Court for the Eastern District of New York and joined with it a plenary suit seeking essentially the same relief. The district court affirmed the order of the referee and dismissed the plenary action. 366 F.Supp. 66 (E.D.N.Y.1973). We affirm.

## I.

In August 1968 appellee Hudleasco conveyed two airplanes it owned and appellee Castle Capital conveyed one airplane it owned to appellee Trans-East Air, Inc., under a lease with an option to purchase. Both Hudleasco and Castle Capital registered title to their aircraft under the Federal Aviation Act, 49 U.S.C. §§ 1301–1542 (1970). On March 15, 1969, Trans-East conveyed the three planes to LCI under a lease with an option to purchase. Trans-East did not record the conveyances to LCI.

On August 18, 1970, LCI filed a petition for arrangement under Chapter XI of the Bankruptcy Act. On August 24 LCI petitioned the referee in bankruptcy for rejection of the airplane conveyances pursuant to section 313(1) of the Bankruptcy Act, 11 U.S.C. § 713(1) (1970). At the time of the petition LCI had ceased using the aircraft and the monthly rental of $18,150 had become a burden.

On September 2, 1970, Referee Rudin conducted a hearing and, finding no opposition, granted the petition by an order dated September 8, 1970.

On October 14, 1970, LCI was adjudicated a bankrupt and appellant was appointed trustee.

In January 1972 the trustee moved the referee to vacate his order of September 8, 1970. The bankruptcy court denied the motion on the ground that the order had created vested rights which its vacation would disturb. The trustee then filed a petition for review and commenced a plenary action in the district court.

The district court declined to reach the jurisdictional issue raised by the appellees in the plenary action. On the merits the court found the trustee's action barred by estoppel and laches. The court therefore dismissed the complaint in the plenary action and affirmed the order of the referee in bankruptcy.

## II.

The trustee advances two theories for recovering the aircraft. First, he argues that the referee's order of rejection never authorized abandonment of the planes. Thus appellees converted the planes by taking possession of them and the trustee may now recover possession in an action for conversion. The trustee's second theory is that, if the referee's order is construed to have authorized surrender of the aircraft, the trustee has shown good cause to vacate the order.

Both theories lack merit.

### A. *Surrender of the Aircraft.*

The trustee notes, that the September 8 order of the referee did not explicitly direct LCI to abandon the planes. However, it is clear that all parties contemplated surrender. After entry of the order appellees took possession without any objection by the debtor. Referee Rudin, who signed the September 8 order, made clear in his memorandum rejecting the trustee's motion to vacate that he had intended the September 8 order to authorize surrender.

The order of disaffirmance makes no sense if it does not authorize surrender

of the planes. As LCI was not using the planes at the time, only by re-leasing them could the debtor be freed of the heavy rentals. As the petition for disaffirmance implied, LCI lacked the ability and inclination to re-lease the planes profitably. Under the circumstances, surrender of the planes was the only reasonable solution.

■ Moreover, even if the order did not authorize abandonment, the failure of the debtor and the trustee to object to the taking of the planes for sixteen months equitably estops the trustee from challenging the abandonment now. See section B.1., infra.

B. *Petition to Vacate the Order of September 8, 1970.*

■ The referee in bankruptcy has discretionary power to vacate a prior order for good cause shown, provided that the order has not created vested rights which its vacation would disturb. Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 137, 57 S.Ct. 382, 81 L.Ed. 557 (1937); Sandusky v. National Bank, 90 U.S. (23 Wall.) 289, 293, 23 L.Ed. 155 (1875); In re Pottasch Brothers Co., 79 F.2d 613, 616–617 (2d Cir. 1935).

The trustee argues for vacation on the ground that the referee mistakenly viewed the conveyances as simple leases. He claims that in fact the conveyances were conditional sales as defined by the Federal Aviation Act § 101(16), 49 U.S.C. § 1301(16) (1970). Thus, the trustee argues, LCI was the "owner" of the airplanes under 14 C.F.R. § 47.5(c) (1973) and, since Trans-East failed to record the sublease to LCI pursuant to section 503(a)(1) of the Federal Aviation Act, 49 U.S.C. § 1403(a)(1) (1970), the conveyances were not valid against the trustee, Federal Aviation Act § 503(c), 49 U.S.C. § 1403(c) (1970), and Trans-East had only an unsecured lien on the planes. Under the trustee's theory Hudleasco and Castle Capital could not have a better claim against LCI than Trans-East, and therefore they are only general unsecured creditors whose rights, as general creditors, under section 70c of the Bankruptcy Act, 11 U.S.C. § 110c, are inferior to the rights of the trustee.

We need not grapple with the many difficult questions which this theory raises since we hold that the action is barred both by equitable and by collateral estoppel.

(1) Equitable Estoppel.

■ The district court found that appellees had changed their position in reasonable reliance on the order of September 8, 1970, issued pursuant to the debtor's petition for disaffirmance. We agree.

■ The trustee claims that he cannot be estopped because he was not a party to the disaffirmance proceeding. But disaffirmance of a contract by the debtor in possession binds the trustee even though the debtor is ultimately adjudicated a bankrupt. 8 Collier, Bankruptcy ¶ 3.15 [9] (14th ed. 1971); cf. In re Wil-Low Cafeterias, Inc., 111 F.2d 83, 84–86 (2d Cir. 1940); In re Imperial "400" National, Inc., 391 F.2d 163, 171–172 (3d Cir. 1968). Thus for purposes of estoppel LCI's petition for disaffirmance is imputed to the trustee.

In this case appellees changed their position in reasonable reliance on the rejection of the contracts. They properly understood the order of September 8 to require them to take the planes and to attempt to mitigate damages by finding a new lessee. However, demand for the aircraft was very low. As the district court found, appellees expended considerable amounts of money, time, and effort to re-lease the planes, and these efforts plus appellees' expertise were largely responsible for the favorable leases eventually obtained.

■ Appellees had a right to rely on the order of disaffirmance. The debtor requested it, the court approved it, and no other party opposed it. For sixteen months neither the debtor nor the trustee objected to appellees' actions. Congress did not intend section 313(1) to be a trap for the unwary. It would be highly inequitable if the lessor, having regained possession of property following an order of disaffirmance and hav-

ing re-leased the property on favorable terms, lost the benefit of the new lease when the debtor or trustee discovered that the contract surrendered as burdensome had suddenly become valuable. The doctrine of estoppel prevents such an inequitable result.

(2) Collateral Estoppel.

In considering the petition for disaffirmance the only issues for the bankruptcy court to decide are whether the contract is executory and whether disaffirmance would be advantageous to the debtor. 8 Collier, supra, ¶ 3.15 [8]. The referee here decided both questions in the affirmative. Unless the trustee has raised new issues here or shown special reasons for vacation of the disaffirmance order, the instant action is barred by collateral estoppel. Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

The trustee has raised no new issues. He tries to circumvent this fact by claiming that the instant action sounds in tort for conversion, a theory not considered in the original proceeding. But, as our earlier discussion indicates, the taking of the planes by appellees was not tortious.

Appellant does not claim that the disaffirmance order is rendered invalid by fraud or bad faith by any party. He alleges that the referee committed a mistake of fact by viewing the conveyances to LCI as leases rather than conditional sales. Section 313(1) does not distinguish between leases and conditional sales. It requires only that the contracts be executory. Whether the contracts here were leases or conditional sales, they were executory. See 1 S. Williston, Contracts § 14 (3d ed. 1957).

It would create an intolerable situation if, after entry of an order of disaffirmance, a party to an executory contract still had to fear that a bankruptcy trustee might subsequently re-open the case and insist on performance. The doctrine of collateral estoppel prevents such a result.