Lewis A. PAUL, Plaintiff,

v.

T. Conrad MONTS, Defendant.

Donald W. BOSTWICK, Trustee of International Plastics, Inc., Plaintiff,

v.

TRAVENCA DEVELOPMENT CORPORATION, a/k/a Transnational Venture–Capital Development Corporation; Titan Energy Co., Ltd.; T. Conrad Monts; Southwest National Bank; Southern Investors Management Company, Inc., a/k/a Simco; and Farmers Home Administration, Defendants.

Civ. A. Nos. 83–1864, 82–6023.

United States District Court, D. Kansas.

April 5, 1989.

C. Robert Bell, Wichita, Kan., for plaintiff Lewis A. Paul.

Warren G. Jones, Malone, Dwire and Jones, Wichita, Kan., for defendant Southwest Nat. Bank.

Thomas V. Murray, Barber, Emerson, Six, Springer & Zinn, Lawrence, Kan., for defendants T. Conrad Monts, Travenca Development Corp. and Titan Energy Co., Ltd.

Benjamin Burgess, U.S. Atty., Robin B. Moore, Asst. U.S. Atty., Wichita, Kan., for defendant Farmers Home Admin.

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Wichita, Kan., and plaintiff in second case, No. 82–6023.

## OPINION AND ORDER

THEIS, District Judge.

This matter comes before the court on motions by all defendants for summary judgment in these consolidated cases. The two cases involve the failure to consummate the Chapter 11 reorganization plan of International Plastics, Inc. (IPI) in 1980–81.

Plaintiff Paul alleges a breach of an employment contract contained in the Chapter 11 plan (the Plan). Plaintiff trustee alleges the Plan gave IPI contractual rights which all defendants breached by not fulfilling the Plan. The court consolidated the two cases in 1986. The court has reviewed the briefs, the deposition extracts and exhibits and is prepared to rule. The court will initially set out a short history of IPI and then treat each motion separately.

In 1978, IPI received a 5 million dollar loan from Southwest National Bank (Bank) with a 90% guarantee by the Farmers Home Administration (FmHA) to construct a plastics manufacturing and packaging facility. Less than two years later, IPI filed a voluntary Chapter 11 petition. On August 20, 1980, the parties appeared before Judge Robert Morton of the Bankruptcy Court of the District of Kansas for a hearing on the second amended plan of reorganization (the Plan). Judge Morton confirmed the Plan two weeks later. The parties never consummated the Plan. In May 1981, the bankruptcy court granted Bank's motion to convert the Chapter 11 proceeding to a Chapter 7 proceeding. Plaintiff trustee subsequently liquidated the property of IPI.

*Bostwick v. Travenca Development Corp., et al.; No. 82–6023*

This suit has a complex procedural history. Plaintiff filed a declaratory judgment action in bankruptcy court in *December 1981* against defendants, all parties to the failed Plan, to determine if any of them had breached their respective duties under the Plan. Defendants' moved to dismiss the claim. Judge Morton granted the motions on procedural grounds but expressed general approval of plaintiffs' claim in dicta (1982 Order). On appeal, the district court by Judge Patrick Kelly reversed the bankruptcy court's ruling on jurisdiction. Plaintiff amended his complaint to assert contractual claims to damages against defendants. In essence, plaintiff asserted the Plan gave it contractual rights which it could enforce in a separate suit outside of the Chapter 11 & 7 bankruptcy proceeding. Defendants again moved to dismiss; Judge Morton denied the motions and upheld plaintiff's cause of action (1984 Order). Subsequently, the parties conducted substantial discovery and defendants now move for summary judgment.

The facts in this case are not seriously in dispute. To almost all facts alleged by defendants, Dkt. No. 32 at 3–17, plaintiff stated the allegation was "undisputed", Dkt. No. 36 at 4–14. After reviewing the depositions in depth, the court finds that the few objections made by plaintiff to defendants' statement of facts are either inconsequential or concern facts not material to the resolution of this motion. The court finds the facts as follows.

Lewis Paul was the president and founder of IPI. IPI owned two adjoining parcels: a 70 acre and a 10 acre tract. The smaller tract included the plastics facility. Bank, Southern Investors Mortgage Co. (SIMCO) and FmHA had several mortgages and liens on the land and the plastics plant. Paul was unable to locate sufficient, additional funding for IPI after the Chapter 11 filing until he met Monts, the president of Travenca. The Plan presented at the August 20 hearing proposed that Travenca, or Monts if necessary, would start Titan Energy, Co. and provide 2.5 million dollars of new capital. The key transaction was Titan's assumption of IPI's 5 million dollar indebtedness to Bank and FmHA in return for title to the plant and a lease of the 10 acre tract. The plan would discharge all of Bank's mortgages and liens against IPI, except for a $370,000 first mortgage on the 70 acre tract.

The negotiations leading to the Plan and its presentation to the bankruptcy court on August 20 were apparently difficult. Martin Bauer represented IPI in the bankruptcy proceedings. Bank represented the interests of SIMCO and FmHA; its attorney was Ed Dwire. Dwire gave Bauer a letter on August 19 stating numerous conditions precedent to FmHA's approval of Titan's assumption of IPI's debt. Neither Dwire nor Bauer raised these conditions at the August 20 confirmation hearing on the Plan.

After the hearing and the bankruptcy court's confirmation of the Plan, the lenders' difficulties with Titan's assumption of IPI's 5 million dollar debt prevented quick implementation of the Plan. SIMCO sent a letter in early September to Monts detailing a dozen conditions precedent to the Travenca/Monts–Titan–IPI deal. FmHA also altered its position after the hearing; it would not release its lien from the ten acre tract. The parties offered several proposals to modify the Plan throughout the remainder of 1980 without making any progress toward implementation of any reorganization plan.

On January 21, 1981, Bank moved to compel implementation of the Plan pursuant to 11 U.S.C. § 1142(b). IPI opposed the motion because it thought an alternative circulating among the parties that month would better accomplish its objectives. IPI moved to extend the Chapter 11 proceedings another 60 days. The bankruptcy court granted IPI's motion. Until mid-February, the parties still considered a successful modification to the Plan the likely outcome of the proceeding. In mid-March, Bank filed a complaint to lift the bankruptcy court stay. IPI contemplated filing a counterclaim to compel implementation of the Plan but ultimately filed only an answer which reserved its right to compel implementation of the Plan.

A month later Bank filed its motion to convert the case to a Chapter 7 proceeding. IPI did not contest the conversion motion, and the court granted the motion on April 27. The bankruptcy court appointed plaintiff trustee for the debtor. Plaintiff sold IPI's two tracts with the plant the next month to the Bank for the price of its liens and mortgages. Neither the bankruptcy court nor Bauer challenged plaintiff's actions regarding IPI's main assets which directly contradicted the Plan's elimination of all liens and mortgages except one.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden of proof at the summary judgment stage is similar to that at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2552–53. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 2553 (emphasis in original). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 106 S.Ct. at 2513.

At the outset, the court must state that this is a case of first impression. The cases cited by the parties provided little assistance in understanding this legal problem. All were distinguishable on their facts or the procedural setting or both. The court's additional research has not revealed any helpful analysis.

■ The court has three reasons to grant defendants' motion for summary

judgment. The first reason assumes the correctness of Judge Morton's 1984 Order while the later two directly reject his prior rulings. Judge Morton's 1984 Order approved of plaintiff's theory that the Plan gave him contractual rights outside of the bankruptcy context. Assuming for the moment the correctness of this theory, this court cannot find that the Plan represented a contract after the full development of the factual record.

A contract is formed when the contracting parties reach a meeting of the minds on all essential terms of the contract. *Augusta Bank & Trust v. Bloomfield,* 231 Kan. 52, 60, 643 P.2d 100 (1982). The evidence now presented to this court, but not available to Judge Morton on the Motion to Dismiss or at the original confirmation hearing, demonstrates that IPI, Travenca, Bank, FmHA and SIMCO had no agreement on the terms to transfer the major loan and most assets from IPI to Titan Energy. Before the confirmation hearing, FmHA informed IPI of many conditions it had on the transfer. A day after the confirmation order, SIMCO added other significant conditions to the transfer. The evidence is very strong that the Plan did not represent an agreement on this key term. A party cannot breach a contract if none exists.

■ Judge Morton made two rulings this court cannot subscribe to that eliminate plaintiff's cause of action. First, Judge Morton rejected out of hand defendants' contention that plaintiff's claim is barred by estoppel. 1982 Order at 4 ("Also, the full record considered, this court finds no justification for staying the trustee's hand on grounds of waiver or estoppel."). If plaintiff has contractual rights stemming from the Plan, he is subject to all contractual defenses, such as estoppel. "(E)quitable estoppel requires consistency of conduct. A litigant is estopped and precluded from maintaining a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction. *Browning v. Lefevere,* 191 Kan. 397, 400, 381 P.2d 524 (1963)." *Rob-*

*ertson v. Ludwig,* 12 Kan.App.2d 571, 581, 752 P.2d 690 (1988).

■ The court finds the elements of estoppel fully met on these facts. Plaintiff trustee is bound by the actions of IPI. *Nicholas v. United States,* 384 U.S. 678, 682, 86 S.Ct. 1674, 1678, 16 L.Ed.2d 853 (1966); *Feldman v. Trans–East Air, Inc.,* 497 F.2d 352, 355 (2d Cir.1974); *In re Nashville White Trucks, Inc.,* 22 B.R. 578, 584 n. 7 (M.D.Tenn.1982). Plaintiff asserts in this court that the Plan gave him contractual rights. However, plaintiff never asserted these rights at any previous time in the bankruptcy court. First, plaintiff never moved to compel implementation of the Plan under 11 U.S.C. § 1142(b). Second, when Bank moved for implementation of the Plan, plaintiff *opposed* the motion in favor of an alternate plan it hoped would gain approval. Third, when Bank moved to convert the case from a Chapter 11 to a Chapter 7 proceeding, plaintiff raised no opposition to this major change. The paragraph in the Order of Conversion that places blame on defendants for failing to implement the Plan is of no consequence. Plaintiff could have asked the bankruptcy court to order implementation instead of conversion. If the bankruptcy court had denied plaintiff's request under any of the three scenarios above, plaintiff could have appealed to the district court. Fourth, Bauer did not contest the liquidation of IPI's assets in May 1981 in direct contravention of the Plan.

Plaintiff, via action or inaction, either thought it had no rights under the Plan or did not want to assert them in the bankruptcy proceedings. Plaintiff trustee's current contentions are barred by IPI's prior conduct. While the elements of estoppel are met, the question remains if this is a situation when estoppel is appropriate or whether plaintiff ought to get a second day in court.

■ At its most basic level, this court disagrees with Judge Morton's conclusion that plaintiff has an implied cause of action in contract for the failure of some party to fulfill a Chapter 11 reorganization plan provision. Judge Morton stated:

To be sure, there is no specific statutory authority for this type of suit. However it does appear to be an action within the compass of the Court's general implementation powers provided by 11 U.S.C. § 105. And surely it qualifies for district court subject matter jurisdiction as a civil proceeding arising under and in a Title 11 case.[13]

footnote 13: See the original jurisdictional grant under the Bankruptcy Code, 11 U.S.C. § 1471(b) (1978), and the counterpart in The Bankruptcy Amendments and Federal Judgeship Act, 11 [sic–28] U.S.C. § 1334(b)

1984 Order at 11. The bankruptcy court also offered a public policy rationale for his ruling: "judicial enforcement of funding commitments might well engender confidence in reorganization proposals and hence encourage participation and acceptance both by creditors and debtors." *Id.* at 12.

The court cannot accept this reasoning because it does not recognize or apply the correct factors in implying causes of action in federal statutes. Congressional intent is the key factor in resolving the propriety of finding an implied cause of action. *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). A court can infer Congress' intent from " 'the language of the statute, the statutory structure, or some other source, . . . .' " *Id.* (quoting *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)). Judge Morton's reliance on the general judicial power and jurisdictional statutes are completely unpersuasive. The implication of a cause of action must come from the substantive statutory provisions. A provision that the bankruptcy court can enter "any order . . . to carry out the provisions of this title," 11 U.S.C. § 1105(a), merely begs the question. The court must scrutinize the substantive law of the title to determine if Congress intended to imply a cause of action.

Plaintiff attempts to draw statutory support for his cause of action from several sections of the Bankruptcy Code. He argues his claim is not barred by the conversion of the case from Chapter 11 to Chapter 7. Dkt. no. 36 at 27–30. First, plaintiff points to 11 U.S.C. § 1112(b) which allows a conversion to Chapter 7 after confirmation of a Chapter 11 plan. The court cannot divine any congressional intent relevant to plaintiff's claim from a statutory provision allowing a debtor to change horses in midstream. This section gives no indication the debtor's horse is available for remounting at a later time. Second, plaintiff cites a provision which ensures conversion from one Chapter to another will not alter key dates like the "commencement of the case" or "the date of the filing the petition." 11 U.S.C. § 348(a). This section adds nothing to the inquiry; all it states is that if you amend your petition to alter the relief requested you are not filing a new case. The section is similar to Fed.R.Civ.P. 15(c) which allows an amendment to the pleadings to relate back to the time of filing. Finally, plaintiff turns to the Advisory Committee Notes to Bankruptcy Rule 1019, an implementing rule for section 348. The drafters state that a conversion to a Chapter 7 case does not invalidate prior rulings by the bankruptcy court. USCS Court Rules, Bankruptcy Rules, Rule 1019 at 58. This court does not dispute the point as long as the case is still in bankruptcy proceedings. Within the bankruptcy framework, plaintiff's rights under the Plan and the Code are fairly clear but they do not encompass this cause of action.

Instead, the language and structure of the statute provide ample evidence that the sole remedy for a debtor disgruntled with a creditor's failure to comply with a confirmed plan lies exclusively within the bankruptcy proceeding. Congress' intent is evident in the weapons it provided Chapter 11 debtors and the bankruptcy courts to effectuate reorganization plans. First, a bankruptcy court can compel implementation of a confirmed plan. 11 U.S.C. § 1142(b). A debtor faced with a Plan gone awry can ask the court for assistance in carrying out the restructuring of its business. Second, if the debtor alone or in consort with its creditors suddenly perceives a better way to right the listing

corporate ship, either can petition the bankruptcy court to modify the plan, if the original plan has not been substantially consummated as defined in 11 U.S.C. § 1101(2). 11 U.S.C. § 1127(b). This provision gives the debtor the option to adjust the corporate course if it has not carried out the original plan so far some creditors would suffer prejudice from the sudden switch. Finally, the debtor or a creditor can convert a Chapter 11 proceeding to a Chapter 7 proceeding only after notice and a hearing on the motion to convert. 11 U.S.C. § 1112(b). Assuming a creditor files the motion to convert, the debtor has one more chance to attempt to gain implementation of the original plan or some alternative plan by opposing the movant at the conversion hearing. The court finds that the sum of these multiple methods for a debtor to force implementation of a plan or to gain judicial sanction for a revised plan is a total preclusion of any congressional intent for plaintiff's proposed cause of action. With all of these remedies available to debtors in the bankruptcy proceeding, this court cannot comprehend that Congress intended to create a separate contract cause of action for a failed plan in an Article III court. The bankruptcy court's concern with the need to give teeth to the enforcement of reorganization plans is met by these statutory provisions.

Moreover, policy arguments cut against plaintiff. If the court allowed plaintiff's cause of action, every failed plan would create one or more contract suits cognizable in state or federal district court. This profusion of litigation would flood the courts with additional cases. Second under plaintiff's scenario, the bankruptcy proceedings would not have any finality. The debtor could bypass all of the above procedures explicitly created to address the concerns at issue in this litigation and then still cry foul. This court is sensitive to claims that a party has not had a forum to air its grievance; however, plaintiff is in a very different situation. Plaintiff had one forum to present its claim and now wants another forum. The court will not allow a second bite at the apple. Defendants' summary judgment motion is granted.

*Paul v. Monts; Case No. 83-1864*

Plaintiff Paul brought two causes of action arising out of the failed Plan. Plaintiff alleges that at the confirmation hearing Monts, as an individual, made promises to Paul, in his individual capacity, to include in the Plan provisions which would 1) give Paul a three year, $60,000 per year, consulting contract with Titan and 2) Travenca or Monts would provide the necessary 2.5 million dollars of new capital. Dkt. No. 1 at ¶¶ 6, 7. Plaintiff claims first that he was a third party beneficiary to the Plan/contract for the employment contract. *Id.* at ¶ 9. The court dismissed this claim in 1985 on estoppel grounds. Dkt. No. 8 at 4. Plaintiff's second claim is a contract claim based on the theory of promissory estoppel. He alleges he reasonably relied on Monts' and Travenca's promise to fund the Plan and revive IPI's business. His IPI stock is now worthless after the failure of the Plan and IPI's liquidation. Dkt. No. 1 at ¶ 10. The court denied the earlier motion to dismiss on this count because of unresolved factual issues. Dkt. No. 8 at 4.

Defendant now moves for summary judgment on the promissory estoppel claim. The court stated the legal standards for summary judgment above and need not repeat them here. A promissory estoppel claim has three elements:

(T)he evidence must show (1) the promise was made under such circumstances that the promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal by the court to enforce the promise must be virtually to sanction the perpetration of fraud or must result in other injustice.

*Berryman v. Kmoch,* 221 Kan. 304, 559 P.2d 790 (1977). Defendant's attack on plaintiff's cause of action focuses on predicate components of the *Berryman* test: Who are the promisor and promisee? Defendant contends that neither the promisor nor the promisee are before the court and summary judgment is proper.

First, defendant asserts he was not the promisor; any statement he made to IPI/Paul was made in his capacity as an agent of Travenca. Dkt. No. 31 at 3. An agent is not liable for actions taken on behalf of a disclosed principal. *Mackey v. Burke,* 751 F.2d 322, 325 (10th Cir.1984). Summary judgment is not proper because at least part of the time Monts acted in his personal capacity regarding the funding of Titan to assume IPI's business. At the confirmation hearing, Monts made clear that if Travenca did not put up the capital for Titan, *he would.* Transcript of Hearing at 73, 84. His statement of personal financial commitment controverts defendant's assertion that Monts acted solely as an agent.

■ Second, defendant asserts plaintiff was not the promisee; any promise Monts made ran to IPI—not Paul. The court agrees. Paul was a stockholder and officer of IPI. Plaintiff loses sight of hornbook corporate law. The corporation and the stockholders are distinct entities. *Iola State Bank v. Biggs,* 233 Kan. 450, 456–57, 662 P.2d 563 (1983). Although a single person may wear both shareholder and officer hats at any given time, the corporation is still a distinct entity. A corporation is a lifeless entity; it can only act through officers and agents. A promise made to a corporate agent to transmit to the corporation does not mean the promise was to the agent. Monts' promises on behalf of himself and Travenca clearly ran to the debtor, IPI, and not to any individual shareholder of officer of IPI. The debtor, not its president, was in bankruptcy and needed a capital transfusion. Paul was not the promisee and no beneficial promise ran to him from Monts or Travenca.

IT IS BY THE COURT THEREFORE ORDERED that Monts' motion for summary judgment, Dkt. No. 31, is granted. IT IS FURTHER ORDERED that the joint motion of all defendants for summary judgment, Dkt. No. 32, is granted.