**In re TELIGENT, INC., et al., Debtors.**

**No. 01–12974 (SMB).**

United States Bankruptcy Court, S.D. New York.

Jan. 8, 2004.

Savage & Associates, P.C., White Plains, NY, Denise L. Savage, JennyAnn Carles, Of Counsel, Attorneys for Unsecured Claim, Estate Representative of Teligent, Inc.

Kirkland & Ellis LLP, New York City, James H.M. Sprayregen, P.C., Jonathan S. Henes, Michael J. Frishberg, Matthew N. Kleiman, Anup Sathy, Of Counsel, Attorneys for Reorganized Teligent.

Togut, Segal & Segal LLP, New York City, Neil Matthew Berger, Of Counsel, Attorneys for Cigna Healthcare.

## MEMORANDUM DECISION DENYING ESTATE REPRESENTATIVE'S MOTION TO VACATE ORDER

STUART M. BERNSTEIN, Chief Judge.

During these chapter 11 cases, the debtors assumed a contract issued by Cigna

Healthcare ("Cigna") that provided medical insurance benefits to the debtors' employees. Savage & Associates, P.C., the estate representative appointed under the debtors' confirmed plan (the "Plan") pursuant to 11 U.S.C. § 1123(b)(3)(B), now seeks to vacate that assumption order under Fed.R.Civ.P. 60(b)(6). The goal of the motion is to deprive Cigna of its principal defense to a preference action recently commenced by the movant. For the reasons that follow, the motion is denied.

## BACKGROUND

### A. Introduction

The debtors (collectively "Teligent") filed their chapter 11 petitions on May 21, 2001. Both prior to and subsequent to the petition date, Teligent was a party to a contract with Cigna that provided health and dental insurance benefits to Teligent's employees. The Cigna contract was critical to Teligent's on-going business. In a "first day" motion, Teligent sought authority to pay the unpaid, pre-petition premiums in the approximate amount of $900,000.00 owed to Cigna and Spectra Vision.[1] (*Motion for Entry of an Order (A) Authorizing, But Not Requiring, Payment of Certain Prepetition (I) Wages, Salaries and Other Compensation, (II) Employee Medical and Similar Benefits [etc.]*, dated May 21, 2001 (the "*Pre–Petition Wages and Benefits Motion*"), at ¶¶ 21–22 (ECF Doc. # 18).) The Court granted the relief, based upon the statement in the motion that "[a]ny failure to pay these amounts would be injurious to employee welfare, morale and expectations." (*Id.* ¶ 21.)

During the chapter 11 case, Teligent sought to line up alternate health insurance but failed. Other insurance companies refused to provide coverage for two reasons. Teligent's loss ratio (the percentage of premium dollars spent on claims) exceeded 100%, and the percentage of COBRA employees exceeded 10%. (*Affidavit of Lynne M. Dumas, Director of Human Resources of Teligent, Inc., In Support of Reorganized Teligent's Objection to Motion and Application of the Unsecured Claims Estate Representative to Partially Vacate Order Of This Court Authorizing the Assumption of a Certain Executory Contract Between the Debtors and Cigna Healthcare*, dated Oct. 30, 2003, ¶¶ 7–13)("*Dumas Affidavit*"). Accordingly, Teligent moved on or about September 5, 2002, to assume the Cigna contract along with several hundred other executory contracts and unexpired leases (the "Assumption Motion")(ECF Doc. # 1217.)

While the Assumption Motion was pending, Teligent confirmed its Plan on September 6, 2002.[2] The Plan substantively consolidated the affiliated debtors into a single entity ("Reorganized Teligent"). Upon confirmation, all of the property of the estate revested in Reorganized Teligent with two exceptions. The "Chapter 5 Causes of Action" and the "Unsecured Claim Fund" were transferred to a newly formed legal entity, the "Unsecured Claim Estate Representative" (hereinafter, the "Representative"). (Plan, Art. III, ¶ B.5(b).) The Representative was "[t]hat person appointed by the Creditors Committee to be the estate representative pursuant to section 1123(b)(3) of the Bankruptcy Code to pursue the Chapter 5 Causes of Action and determine the validity, priority and amount of the General Unsecured Claims." (Plan, Art. I, ¶ B.69.)

---

1. Spectra Vision covered vision-related services.

2. The efforts to confirm the Plan are described in *In re Teligent, Inc.*, 282 B.R. 765 (Bankr.S.D.N.Y.2002).

The "Chapter 5 Causes of Action" included "[a]ny and all of any Debtors' rights, claims, or causes under sections 542, 544, 545, 547, 548, 549, 550 and 552(b) of the Bankruptcy Code, whether known or unknown, in law, equity or otherwise, except to the extent waived or retained by the Debtors during the Chapter 11 Cases or pursuant to the Plan." (Plan, Art. I, ¶ B.15.) Lastly, the "Unsecured Claim Fund" meant the $300,000.00 transferred to the Representative as seed money to finance the necessary investigation and litigation. (*See* Plan, Art. I, ¶ B.70.)

The Plan became effective on September 12, 2002. On that same day, Bloom, Borenstein & Savage, P.C., a predecessor firm to Savage & Associates, P.C., was selected as the Representative.[3] (*See Savage & Associates, P.C. v. Bloom, Borenstein & Savage, P.C. (In re Teligent Servs., Inc.)*, Adv. Proc. No. 02–3883 (Complaint, dated Dec. 23, 2002, Ex. B).)

On October 18, 2002, the Court granted the part of the Assumption Motion that included the Cigna contract, without opposition, and signed an order the same day. The order authorized the assumption of the Cigna contract along with twenty-nine other executory contracts, based upon a finding that "the relief requested is in the best interests of the Debtors, their estates, their creditors and other parties in interest." (*Supplemental Order Authorizing the Assumption of Certain Executory Contracts*, dated Oct. 18, 2003, at p. 1)(the "Assumption Order")(ECF Doc. # 1303).[4] The assumed Cigna contract thus became an asset of Reorganized Teligent. No one, including the Representative, appealed from the Assumption Order. If the Cigna

Contract had not been assumed, it would have been deemed rejected under the Plan. (*See* Plan, Art. VII, ¶ A.)

## B. The Representative's Motion

On May 13, 2003, the Representative commenced an adversary proceeding against Cigna and Cigna Behavioral Healthcare to recover over $9 million in pre-petition preferences and over $1 million in post-petition transfers. The amended complaint dropped Cigna Behavioral Healthcare as a defendant. Cigna thereafter moved to dismiss the adversary proceeding, invoking the well-settled doctrine that a preference action may not be maintained for payments made in connection with an assumed executory contract. *E.g., Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 318 (3d Cir.2003); *In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1172 (7th Cir.1996).

Cigna's motion to dismiss apparently prompted this motion by the Representative. The movant seeks to vacate the part of the Assumption Order relating to the Cigna contract pursuant to Fed.R.Civ.P. 60(b)(6), and combines two arguments, one procedural and the other substantive in nature. First, she contends that she did not receive notice of the Assumption Motion—she was appointed afterwards—and implies that the Assumption Order was entered so soon after her appointment that she could not attack it directly.

Second, she maintains that the Assumption Order was not supportable under the business judgment rule. The Assumption Motion did not include any factual information regarding the exercise by Teligent of its business judgment, and the Assump-

---

**3.** The term "Representative" includes both Savage & Associates, P.C. and Bloom, Borenstein & Savage, P.C., and refers to whichever one was serving in the capacity as Representative at the time.

**4.** Subsequent references to the Assumption Motion and Assumption Order are limited to the portions that concern the Cigna contract.

tion Order lacked detailed findings. In addition, Teligent failed to consider the potential recovery of the transfers made to Cigna, now estimated in the reduced amount of approximately $4 million, that would be indirectly released. According to the Representative, the benefit of that recovery outweighs the benefit realized through the assumption of the Cigna contract. Her argument concludes that the creditors would suffer undue hardship if the Assumption Order barred the Representative from pursuing the preference action.[5]

Cigna challenges the Representative's standing, contends that she is estopped by the actions of Teligent, and argues that the motion must be denied under the doctrine of equitable mootness. In addition, Cigna and Reorganized Teligent assert that the Assumption Order was supported by business judgment, and the Representative has failed to make the showing required for relief under Rule 60(b)(6).

## DISCUSSION

### A. Standing

Cigna makes a compelling argument that the Representative lacks standing. The Plan granted the Representative the right to pursue chapter 5 causes of action, limited, however, to the extent that the cause of action was "waived or retained by the Debtors during the Chapter 11 Cases

or pursuant to the Plan." (Plan, Art. I, ¶ B.15.) As Cigna argues, the Plan did not give the Representative the right to challenge orders entered during the case that affected the ability to pursue avoidance claims.[6]

Furthermore, it is not likely that the Plan proponents intended to allow the Representative to do so, particularly where it would adversely affect the business of Reorganized Teligent. Here, vacatur of the Assumption Order would leave Reorganized Teligent's employees without medical insurance. The *Dumas Affidavit* described Teligent's unsuccessful efforts to obtain alternate insurance during the case, and this suggests that Reorganized Teligent will find it difficult and expensive, if not impossible, to locate another source.

■ The Representative dismisses the standing objection, invoking the statutory powers of trustees and estate representatives in general, and § 544(b) of the Bankruptcy Code in particular. (*See Representative's Reply* at 10–11.) This argument misses the point. While the Bankruptcy Code defines the maximum reach of her power, the Plan limits it. In other words, the Representative's powers are contractual in the first instance, not statutory. *See Mancuso v. Sullivan (In re Sullivan)*, 153 B.R. 751, 757 & n. 6 (Bankr.N.D.Tex. 1993)(post-confirmation trustee lacked standing to challenge individual chapter 11

---

**5.** The Representative raised an additional argument, for the first time, in her reply papers. She contended that the debtors made the payments on account of a different insurance contract than the one that was assumed. (*Unsecured Claims Estate Representative's Reply to the Reorganized Teligent's and Cigna Healthcare's Respective Objections to the Representative's Motion to Vacate*, dated Nov. 17, 2003 ("*Representative's Reply* "), at pp. 3–8.) A court will not normally consider arguments raised for the first time in a reply brief, *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999); *Keefe v. Shalala*, 71 F.3d 1060, 1066 n. 2 (2d

Cir.1995), and I decline to consider the Representative's belated contention in connection with this motion.

**6.** While the Assumption Order was entered after the Plan was confirmed, it was nonetheless entered "during the Chapter 11 Cases," and "pursuant to the Plan." In fact, the Plan carves out the contracts which were the subject of the Assumption Motion from the automatic rejection that would have otherwise ensued. (Plan, Art. VII, ¶ B.)

debtor's discharge because plan did not grant authority to do so).

▪ To demonstrate her standing, the Representative must, therefore, point to a provision in the Plan that granted her standing. She has not, and she cannot. All that the Plan bestowed was the authority to bring avoidance claims that had not been released. It did not grant the Representative the express right to challenge any order that affected her ability to prosecute an avoidance claim, and there is little reason to imply such a right either.

It is unnecessary, however, to resolve the question of the Representative's standing. If we assume that she has it, she has nonetheless failed to show that she is entitled to relief under Fed.R.Civ.P. 60(b)(6).

## B. Fed.R.Civ.P. 60(b)(6)

### 1. Introduction

▪ Federal Rule of Civil Procedure 60(b)(6), incorporated by Bankruptcy Rule 9024, provides in pertinent part that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for … (6) any other reason justifying relief from the operation of the judgment".[7] The decision on a motion under Rule 60(b) is committed to the Court's discretion. *National Petrochemical Co. of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir.1991); 12 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 60.22[1], at 60–64 to 60–65 (3d ed. 2003)("MOORE"). Although subsection (6) "should be liberal-

ly construed when substantial justice will thus be served," *Quevedo v. Postmaster, United States Postal Service,* 774 F.Supp. 837, 839 (S.D.N.Y.1991), the movant must show extraordinary circumstances or an extreme and undue hardship. *In re Emergency Beacon Corporation,* 666 F.2d 754, 759 (2d Cir.1981); *Key Mechanical Inc. v. BDC 56 LLC,* No. 01 Civ. 10173(RWS), 2002 WL 467664, at *4 (S.D.N.Y. March 26, 2002), *aff'd,* 330 F.3d 111 (2d Cir.2003).

▪ In addition, the motion under Rule 60(b)(6) must be made within a "reasonable time." What qualifies as a "reasonable time" depends on the facts of a given case, including the length and circumstances of the delay, intervening rights, the possibility of prejudice to the opposing party and the desirability that judgments be final. *In re Emergency Beacon Corporation,* 666 F.2d at 760; *McKenna v. Ward,* No. 88 Civ. 0513, 1997 WL 66779, * 5 (S.D.N.Y. Feb. 18, 1997); *In re Krautheimer,* 210 B.R. 37, 45 (Bankr.S.D.N.Y.1997).

### 2. Lack of Notice

▪ The Representative contends that because she did not personally receive notice of the Assumption Motion, and the Assumption Order was entered approximately one month after her appointment, she is somehow not bound or should be "less bound" by the Assumption Order.[8] This argument is foreclosed, however, by Teligent's knowledge and actions which are imputed to the Representative.

---

7. Rule 60(b) relief is limited to parties or their representatives. The Representative insists that she is a separate entity, and suggests that she is not a successor to Teligent. (*Representative's Reply* at 10.) If she means she is not a party to the Assumption Order, her motion is barred by the express terms of Rule 60(b). I assume for present purposes that the Representative is a "party" within the meaning of

Rule 60(b), although her arguments may raise some doubt.

8. Although the Representative relies exclusively on Rule 60(b)(6), her "procedural" argument sounds like a claim of "excusable neglect" under Fed.R.Civ.P. 60(b)(1) rather than "extraordinary circumstances."

*In re XO Communications, Inc.*, 301 B.R. 782 (Bankr.S.D.N.Y.2003) aptly illustrates this point in rejecting an argument similar to the one made here. *XO* was another debtor in this court, and had been engaged in the telecommunications business. The *XO* court fixed a bar date of July 22, 2002. Prior to the bar date, Teligent held a preference claim against *XO*, but did not file a proof of claim or otherwise assert the preference claim. After her appointment, the Representative filed a late claim in *XO*, and subsequently moved in the *XO* court to allow the filing of the late claim on grounds of excusable neglect. She argued that she did not receive adequate notice of the July 22, 2002 bar date.

The *XO* court disposed of the Representative's first contention by observing that Teligent was an "unknown creditor." Hence, it received adequate notice through the publication of the bar date in *The Wall Street Journal. Id.* at 795. Thus, the court implicitly held that the Representative stood in the shoes of Teligent, and the publication notice it received would be imputed to the Representative.

The court made the point explicitly in rejecting the second argument based on excusable neglect:

> [T]he Representative is effectively the successor in interest to Teligent's rights to pursue avoidance actions and there is no reason to distinguish the actions of the Representative from those of Teligent. The fact that Teligent made an informed decision to pursue avoidance actions after confirmation by way of the Representative, instead of doing it itself, should not under the circumstances as presented herein result in a different type of analysis or outcome when examining the *Pioneer* factors. Accordingly, the Court must focus on (1) Teligent's actions, in that the alleged Preference

Claim arose upon the filing of its own bankruptcy case, and (2) Teligent's knowledge, if any, it had regarding the Debtor's bankruptcy proceedings, to determine if its reasons for delay are excusable.

*Id.* at 798. The *XO* court then considered the Representative's motion as if Teligent had made it, and concluded that her motion should be denied based on what Teligent knew and did. *See id.* at 798–800.

Here, Teligent made the Assumption Motion and procured the Assumption Order, and its knowledge and actions are imputed to the Representative. Hence, she must be deemed to have known about the Assumption Motion when it was made and the Assumption Order when it was entered because Teligent knew.

### 3. Estoppel

■ The imputation of Teligent's knowledge and actions also estops the Representative from challenging the Assumption Order. *Feldman v. Trans–East Air, Inc.*, 497 F.2d 352 (2d Cir.1974) is directly on point. There, a debtor in possession under former Chapter XI of the 1898 Bankruptcy Act had disaffirmed three aircraft leases. Following adjudication, the trustee sought to vacate the disaffirmance order, contending that they were not true leases. Both the bankruptcy and district courts denied the motion.

Affirming the lower courts, the Court of Appeals articulated certain principles that also bear on the present motion. First, the order of disaffirmance was binding on the trustee, even though he was not a party to the disaffirmance proceeding. *Id.* at 355; *accord Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir.1992). Second, the debtor's actions in seeking and obtaining the disaffirmance order would be imputed to the

trustee for the purposes of estoppel. *Trans–East Air,* 497 F.2d at 355.

It followed from these conclusions that the trustee was equitably estopped from vacating the disaffirmance order.[9] The lessors had reasonably relied on the rejection of the aircraft leases, and spent considerable time and money to release the planes on favorable terms:

> It would be highly inequitable if the lessor, having regained possession of property following an order of disaffirmance and having re-leased the property on favorable terms, lost the benefit of the new lease when the debtor or trustee discovered that the contract surrendered as burdensome had suddenly become valuable. The doctrine of estoppel prevents such an inequitable result.

*Id.* at 355–56; *accord Eastern Air Lines, Inc. v. Insurance Co. of State of Pennsylvania (In re Ionosphere Clubs, Inc.),* 85 F.3d 992, 999–1000 (2d Cir.1996)(chapter 11 trustee equitably estopped from challenging computation and legality of insurance premiums where debtor in possession had assumed insurance contract after extensive negotiations, and did not contest the computation or legality of the premiums); *In re Superior Toy,* 78 F.3d at 1176 (chapter 7 trustee was barred by doctrine of equitable estoppel from arguing that bankruptcy court erred in entering assumption order during superseded chapter 11 case).

Here, Cigna, Reorganized Teligent and its employees reasonably relied on the Assumption Order, and changed their positions. Teligent ceased its unsuccessful efforts to obtain alternate insurance. Reorganized Teligent paid premiums, and 20% of those premiums came from deductions from the employees' wages.

(*Pre–Petition Wages and Benefits Motion,* ¶ 22.) Between September 1, 2002 and October 31, 2003, Cigna processed approximately 5,811 claims arising under the Cigna Contract, issuing 4,230 checks in the aggregate amount of $1,016,926.00. (*Affidavit of Anthony J. Crean,* sworn to December 3, 2003, at ¶ 2.) If the Assumption Order is vacated and the Cigna contract is deemed rejected, someone—perhaps the employees—may have to reimburse Cigna.

The Representative proposes to ignore the prejudice that would befall these parties in order to enhance a potential preference claim. It would be grossly unfair, however, to disturb the rights that have vested during the past year under the Assumption Order. Moreover, vacatur would foster an "intolerable situation" if the non-debtor parties or beneficiaries under assumed contracts faced the prospect that a successor estate representative could re-open final orders after the parties had changed their positions. *See Trans–East Air,* 497 F.2d at 356.

## 4. Extraordinary Circumstances and Undue Hardship

██ Turning to the substantive argument, I also conclude that the Representative failed to make the required showing under Rule 60(b)(6). Invoking the business judgment rule, the motion states:

> Simply put, because the recovery of the Avoidance Claims greatly outweighs any benefit provided to the Debtors and their estates via the Assumption of the Cigna Contract, the assumption of the Cigna Contract does not satisfy the well-settled "business judgment" standard in

---

**9.** The Court also concluded that the trustee was collaterally estopped from seeking to vacate the disaffirmance order, *see Trans–East* *Air,* 497 F.2d at 356, but the parties to the current motion have not raised collateral estoppel.

this jurisdiction in accordance with 11 U.S.C. § 365 as discussed below.[10]

■ The argument suffers from several defects. First, extraordinary circumstances do not exist unless "the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought." 12 MOORE § 60.48[3][b], at 60–171. Teligent would be hard-pressed to argue that it should be relieved from the Assumption Order under Rule 60(b)(6) because it failed to exercise business judgment. Teligent's fault is imputed to the Representative, and she cannot succeed where Teligent would fail.

■ Second, the Representative's arguments simply charge legal error which is an insufficient ground to justify relief under Rule 60(b)(6). The Representative contends, in essence, that the Court made a mistake when it granted the Assumption Motion: Teligent did not exercise its business judgment, the Assumption Motion did not articulate any facts to support a conclusion that it did, the Court did not make specific findings to support the Assumption Order, and lastly, the Assumption Order cannot be supported under the business judgment rule because the downside to the creditors outweighs any benefit to Reorganized Teligent.

■ Assuming they had merit, these are arguments for an appeal. Rule 60(b)(6) is not, however, a substitute for an appeal from an erroneous judgment. *Glendora v. Tele–Communications, Inc.*, No. 96 Civ. 4270(BSJ), 1997 WL 51509, at *1 (S.D.N.Y. Feb.7, 1997); *Raul v. Ameri-*

*can Stock Exchange, Inc.*, No. 95 Civ. 3154(SAS), 1996 WL 627574, at *1 (S.D.N.Y. Oct.29, 1996); *see Matarese v. LeFevre*, 801 F.2d 98, 107 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *Eutectic Corp. v. Metco, Inc.*, 597 F.2d 32, 34 (2d Cir. 1979)("The limitation on the use of Rule 60 motions as a substitute for appeal is especially true of motions under Rule 60(b)(6).").

I note, in this regard, that the Representative failed to appeal from the Assumption Order, although it was entered more than one month after her appointment. She probably did not focus on its effect until Cigna relied on it as a complete defense. But this is another way of saying that the Representative failed to file a timely appeal due to excusable neglect. She could not have obtained additional time to file an appeal from the Assumption Order based on excusable neglect, *see* Fed. R. Bankr.P. 8002(c)(1)(D), and she cannot circumvent this restriction and prosecute an untimely appeal indirectly through the present motion.

In any event, the Representative has not shown the "extraordinary circumstances" or "undue hardship" necessary to succeed under Rule 60(b)(6). As she concedes, her argument comes down to the possibility that the creditors may recover more through the successful pursuit of the preference action against Cigna if the order is vacated. The possibility of a greater distribution to creditors does not create a basis for relief under Rule 60(b)(6). *See Key Mechanical Inc. v. BDC 56 LLC*, 2002 WL 467664 at *4.

Furthermore, vacating the Assumption Order would prejudice the intervening

---

**10.** *See Motion and Application of the Unsecured Claims Estate Representative to Partially Vacate an Order of this Court Authorizing the Assumption of a Certain Executory Contract* *Between the Debtors and Cigna Healthcare [etc.],* dated Oct. 3, 2003, at p. 5 (ECF Doc. # 1698).

rights discussed *supra* in connection with equitable estoppel. If the Assumption Order is vacated, the Cigna contract will be deemed rejected under the Plan, possibly as of the date of the confirmation order. The *Dumas Affidavit* explained Teligent's earlier difficulties in attempting to locate substitute health insurance. Reorganized Teligent may face similar obstacles.

Worse still, a retroactive rejection would cast a pall on the rights and obligations of the parties, particularly the employees. It would be akin to a complete rescission. To put the parties back in their proper places, Cigna might have to return the postpetition premiums to Reorganized Teligent. It might then be able to recover the insurance payments from the providers that it paid directly or from the employees that it reimbursed. Either way, the employees could face the unforeseen liability for uninsured, past medical services.

The Representative dismisses the last possibility with the weak argument that employees would be protected under the doctrine of *quantum meruit,* but she does not explain how this protection would supposedly work. The employees were not parties to the Cigna contract. Unless Reorganized Teligent was contractually obligated to provide health and dental insurance—and assumed that obligation under the Plan—the employees would not have any recourse following a rejection.

Finally, *In re Maxwell Newspapers, Inc.,* 170 B.R. 549 (S.D.N.Y.1994), which the Representative quotes from and on which she relies, is distinguishable. There, the bankruptcy court approved a settlement of a preference claim under which Travelers Indemnity Company paid the debtor approximately $41,000.00. As part of the settlement, the debtor released Travelers from further liability. After the debtor granted the Official Committee of Unsecured Creditors the right to prose-cute its avoidance claims, the Committee discovered that the debtor had made transfers aggregating $ 2.4 million to Travelers during the 90 day preference period.

The potential avoidance claims that the settlement released had not been disclosed to the bankruptcy court. On the Committee's motion, Judge Brozman vacated the settlement under Fed.R.Civ.P. 60(b)(3). She ruled that the motion to approve the settlement contained material omissions and had the effect of lulling the reader into believing that the parties' disputes involve tens of thousands rather than millions of dollars.

Travelers appealed but the district court affirmed. The district court observed that bankruptcy courts, as courts of equity, have the power to modify or vacate a previous order "so long as no intervening rights have become vested in reliance on such order." *Id.* at 550. It concluded that the papers attached to the settlement motion did not reflect the preferential payments that prompted the Committee's motion, leading to an "illconsidered" settlement. *Id.*

*Maxwell* did not involve the issues of standing, equitable estoppel or intervening rights presented by the Representative's motion. Furthermore, the *Maxwell* case essentially concerned a fraud on the court. The debtor was seeking approval of a settlement which included a release, but omitted material information from its motion—the value of the claims that were being released. As a result, the court vacated the settlement approval under Rule 60(b)(3) which deals with "fraud ... misrepresentation, or other misconduct of an adverse party."

In contrast, the Representative moved under Rule 60(b)(6) rather than Rule 60(b)(3). The grounds for relief under the six subparagraphs of Rule 60(b) are mutually exclusive. *Liljeberg v.*

*Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *see* 12 MOORE § 60.48[2], at 60–168 to 60–169. In other words, the Representative cannot seek relief under Rule 60(b)(6) based on material omissions in the Assumption Motion.

Furthermore, the facts of this case are unusual, and one cannot view the Assumption Motion without also considering the Plan confirmed one day later. The property of the estate was divided, through revesting, between Reorganized Teligent and the Representative. The latter received the chapter 5 causes of action except to the extent that they were waived in the case or under the Plan.

Whatever Teligent gave to the Representative was a gift from its secured bank lenders who had a lien on all of the assets. *See In re Teligent, Inc.;* 282 B.R. at 768 (noting that Teligent's lenders "agreed to assign their collateral—the chapter [5] avoidance claims—to the Unsecured Claims Estate Representative"). Teligent was administratively insolvent, and the unsecured creditors were "out of the money." For this reason, the class was conclusively presumed to reject the Plan, and did not vote. (*Plan*, Art. III, ¶ B.5(c).) Teligent could have transferred less than it did or nothing at all to or for the benefit of the unsecured creditors and still confirmed the Plan. It was not obligated to maximize the value of that transfer any more than it was obligated to make the transfer in the first instance.

The Court has considered the Representative's remaining arguments, and concludes that they lack merit. For the foregoing reasons, the motion to vacate the Assumption Order is denied.

Settle order on notice.