78 F.3d 1169
 64 USLW 2611, 28 Bankr.Ct.Dec. 933, Bankr.
L. Rep. P 76,970
 In the Matter of SUPERIOR TOY & MANUFACTURING COMPANY,
INCORPORATED, also known as Carter Manufacturing
Company, an Illinois Corporation, Debtor.
Appeal of Catherine STEEGE, not individually but as Trustee
for Superior Toy & Manufacturing Company, Incorporated.
 No. 95-2172.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 9, 1996.
Decided March 7, 1996.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94 C 3181; John A. Nordberg, Judge.
 Catherine Steege (argued), Frances Gecker, Jenner & Block, Chicago, IL, for Trustee--Appellant.
 Douglas Bacon (argued), Carrie L. DeValk, Latham & Watkins, Chicago, IL, for Appellee.
 Before WOOD, Jr., ESCHBACH, and DIANE P. WOOD, Circuit Judges.
 ESCHBACH, Circuit Judge.
 
 
 1
 Catherine Steege, acting in her capacity as trustee for chapter 7 bankruptcy petitioner Superior Toy & Manufacturing Company ("Superior Toy"), brought the instant "preference suit" pursuant to 11 U.S.C. § 547(b) to recover payments made to the Playtex Family Products Corporation ("Playtex"). The payments in question were monies due to Playtex under the terms of a licensing agreement with Superior Toy which was assumed by Superior Toy pursuant to 11 U.S.C. § 365 while Superior Toy was attempting chapter 11 reorganization, prior to Steege becoming trustee. Playtex moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Superior Toy's assumption of the licensing agreement precluded Steege from bringing a subsequent preference suit as a matter of law. The bankruptcy court agreed with Playtex and dismissed the suit. Steege appealed to the federal district court, asking the court to reverse the decision of the bankruptcy court. The federal district court declined Steege's request. Steege now asks us to reverse the district court. Because we agree with the lower courts, and the other circuits to consider the issue, we AFFIRM.
 
 I.
 
 2
 On February 7, 1989, Superior Toy entered into a contract with The Cherubs Collection, a division of Playtex. Under the terms of the agreement, Superior Toy obtained an exclusive, non-transferable license to distribute toys using "Cherubs Collection" trademarks throughout North America in exchange for quarterly royalty payments to Playtex. Unfortunately, as a result of financial difficulties, Superior Toy fell delinquent on its obligations to Playtex. On December 20, 1989, Superior Toy finally paid to Playtex the quarterly royalty payments owed for the first three quarters of 1989, totalling $46,063.30.
 
 
 3
 On March 9, 1990, Superior Toy's creditors filed an involuntary bankruptcy petition, seeking to force Superior Toy into chapter 7 bankruptcy. On March 27, 1990, Superior Toy converted the proceedings to a voluntary reorganization under chapter 11. While the case proceeded under chapter 11, Superior Toy retained control as debtor-in-possession. On November 8, 1990, Superior Toy petitioned the bankruptcy court to assume the agreement with Playtex as an executory contract pursuant to 11 U.S.C. § 365. At the time of the assumption petition, Superior Toy owed to Playtex $6,565.00. In compliance with § 365(b), Superior Toy represented to the court that it could cure the $6,565.00 default, and make future payments due under the terms of the contract. The bankruptcy court, without a hearing, issued an order authorizing Superior Toy to assume the contract and pay the $6,565.00 owed to Playtex.
 
 
 4
 On December 26, 1991, Superior Toy converted the petition back to chapter 7. Once the case reverted back to chapter 7, Catherine Steege was appointed trustee of the bankruptcy estate. On October 21, 1993--almost two years after the bankruptcy court entered the assumption order--Steege sued Playtex among others in bankruptcy court pursuant to 11 U.S.C. § 547(b), seeking to recover as preferential transfers monies paid by Superior Toy within ninety days prior to the bankruptcy petition. In Playtex's case, Steege sought to recover the $46,063.30 in royalties.
 
 
 5
 Playtex moved to dismiss Steege's suit pursuant to Rule 12(b)(6)[1] for failure to state a claim. The bankruptcy court granted Playtex's motion, holding that Steege was bound by the decision of her predecessor: the debtor-in-possession. According to the bankruptcy court, the assumption by the estate of the license agreement pursuant to 11 U.S.C. § 365 precluded as a matter of law a finding that the pre-petition payments are preferential pursuant to 11 U.S.C. § 547(b)(5). Steege appealed the decision to federal district court. Agreeing with the bankruptcy court, the district court affirmed. The district court reasoned that prohibiting preference suits against parties to assumed executory contracts is consistent with the requirement of 11 U.S.C. § 365(b) that debtors make whole contracting parties before contracts can be assumed. Steege now brings this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d).
 
 II.
 
 6
 Steege asks us to hold that a bankruptcy debtor can both assume an executory contract and sue the contracting party to recoup payments made to the contracting party pursuant to the contract. Steege argues that the plain language of the relevant statutes dictates such a result. The district court erred, according to Steege, by interpreting the statutory provisions to permit either assumption of the contract or a preference suit, but not both. Reviewing the decision of the district court de novo, and accepting as true the facts alleged by Steege, we reject Steege's argument.
 
 
 7
 A. 11 U.S.C. §§ 365 & 547.
 
 
 8
 We begin our analysis with the plain language of the relevant code provisions. Title eleven, section 547(b) of the United States Code provides that a trustee may avoid any transfer on an interest in property of the debtor if the transfer meets five requirements. The transfer must be: (1) to or for the benefit of the creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; and (4) made within 90 days before the date of filing the petition.[2] The fifth requirement, 11 U.S.C. § 547(b)(5), limits the scope of a trustee's ability to recoup transfers to those which:
 
 
 9
 enable[ ] such creditor to receive more than such creditor would receive if--
 
 
 10
 (A) the case were a case under chapter 7 of this title;
 
 
 11
 (B) the transfer had not been made; and
 
 
 12
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 13
 Section 547(b)(5) provides that a trustee may avoid any payment by the debtor that conferred upon the recipient a benefit greater than a similarly situated creditor would have received in a hypothetical chapter 7 liquidation executed on the date of the bankruptcy petition. Palmer Clay Products Co. v. Brown, 297 U.S. 227, 229, 56 S.Ct. 450, 450-51, 80 L.Ed. 655 (1936); Neuger v. United States (In re Tenna Corp.), 801 F.2d 819, 822 (6th Cir.1986); 4 COLLIER ON BANKRUPTCY p 547.08 at 547-45 (15th ed. 1995). In other words, when the trustee brings a § 547(b) preference suit, the court is required to determine what each creditor would have received if the estate was liquidated and distributed to the creditors as provided in chapter 7 on the date that the bankruptcy petition was filed, and whether the creditor in question received more than his fair share.
 
 
 14
 Taken together, the five requirements of section 547(b) are designed primarily to encourage an equitable distribution among similarly situated creditors. Matter of Smith, 966 F.2d 1527, 1535 (7th Cir.) (citing H.R.Rep. No. 595, 95th Cong., 2nd Sess. 177-78 (1978) U.S.Code Cong. & Admin.News 1978 pp. 5787, 5963, 6137-6139), cert. dismissed, 506 U.S. 1030, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992). Section 547(b) also functions to prevent a rush to "dismember a financially unstable debtor" by reducing creditors' incentive to loot a debtor's coffers just prior to the debtor's bankruptcy petition. Id.
 
 
 15
 Title eleven, section 365(b) provides that "subject to the court's approval," a trustee may assume any executory contract[3] of the debtor. If the court grants a trustee's petition pursuant to § 365(b), the contracting party has no choice; he must continue to perform under the terms of the contract with the debtor. See Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1310 (5th Cir.1985). In fact, if the language of the contract so permits, the trustee may assign the contract for profit; the contracting party remains obligated to perform. The code took care to insure that contracting parties are not unfairly burdened by their continued indentured servitude. If the debtor is delinquent under the executory contract, the trustee must demonstrate to the court that he can cure the default and make future payments. Section 365(b)(1) provides:
 
 
 16
 If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee--
 
 
 17
 (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
 
 
 18
 (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
 
 
 19
 (C) provides adequate assurance of future performance under such contract or lease.
 
 
 20
 Section 365 requires a court to consider whether assumption of the contract in question will further either the rehabilitation or liquidation of the bankruptcy estate. H.R.Rep. No. 595, 95th Cong., 2nd Sess. 348-49 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05. An assumption order pursuant to § 365 distinguishes the contracting party from other creditors. The contracting party is forced to continue to do business with the debtor. In exchange, the contracting party is entitled to payment of all amounts due him under the contract up until the time of the order. In other words, the assumption gives the contracting party a secured interest in monies due him. Payments made postpetition but prior to assumption, payments made at the time of assumption, and payments made following assumption are not preferential because the contracting party is entitled to 100% of his claim. Alvarado v. Walsh (In re LCO Enterprises), 12 F.3d 938, 941 (9th Cir.1993).
 
 
 21
 Viewed separately, § 547(b) and § 365 pose no inconsistencies. How a party to an executory contract will fare in the hypothetical world of § 547(b)(5) depends in large part on whether the debtor elects to assume the contract pursuant to § 365. If the contract is not assumed, the contracting party is subject to § 547(b). If the contract is assumed, the contracting party is entitled to receive all amounts in arrears in exchange for forced performance.
 
 
 22
 B. The Conflict Between the Statutory Provisions.
 
 
 23
 The conflict between the statutes becomes apparent, however, when one considers a situation such as this case. Specifically, the question left unanswered by either section is whether a trustee is entitled to both assume a contract and bring a preference suit. Steege argues that indeed both avenues are available to a trustee. Steege reasons as follows. Section 547(b)(5) requires the court to determine what a creditor would receive in a hypothetical chapter 7 distribution. Part of that hypothetical analysis is a determination of whether the hypothetical chapter 7 trustee would assume the contract pursuant to § 365. A chapter 7 trustee would assume the contract if assumption was necessary either to liquidate the estate or to generate a net gain for the benefit of the estate's creditors (i.e. whether the trustee could assign the contract for profit). If the court concludes that a hypothetical trustee would assume the contract, then payments made to the contracting party during the prepetition period are not preference payments because by definition the creditor "received payment of such debt to the extent provided by the provisions" of chapter 7. In other words, according to Steege, because § 365 guarantees payment of all monies owed prior to assumption, the contracting party would have received payment via § 365 if he had not received payment within 90 days prior to the bankruptcy petition.
 
 
 24
 Under Steege's rationale, she is entitled to have a court determine whether a hypothetical chapter 7 trustee would assume the license agreement, even though her predecessor already assumed the contract in chapter 11. Adopting that position would almost guarantee her victory over Playtex. The Playtex contract by its own terms is not assignable, nor is it necessary to distribute the bankruptcy estate to the estate's creditors. A hypothetical chapter 7 trustee would probably not assume the contract. The prepetition payments to Playtex would not constitute "payment of such debt to the extent provided by the provisions" of chapter 7. Therefore, Steege would be able to recapture the prepetition payments to Playtex, despite the standing assumption order.
 
 
 25
 The position Steege urges opens the door for bankruptcy courts to reach very bizarre results. The case at bar is one example. Under Steege's analysis, a bankruptcy court would force Playtex to disgorge its payments despite the fact that an assumption order was issued prior to Steege's preference suit. Steege argues that under her interpretation of the statutes a trustee will only be able to prevail in both an assumption petition and a preference suit in cases where the assumption occurred in chapter 11. Steege contends that her interpretation is tenable when one considers the different interests of chapter 7 and chapter 11 trustees. As noted above, a chapter 7 trustee will assume an executory contract if the contract can be transferred for profit. A chapter 11 trustee will assume an executory contract if the contract facilitates the debtor's financial reorganization and emergence from bankruptcy. Steege maintains that § 547(b)(5) requires a hypothetical chapter 7 analysis conducted at the time of the original bankruptcy petition, without regard to actual events that transpired after the bankruptcy commenced. Section 547(b)(5) neither requires nor permits a hypothetical chapter 11 analysis. Therefore, Steege reasons, the best interests of the estate as defined by a chapter 7 trustee is the proper analysis.
 
 
 26
 Steege's argument is remarkably suspect because, under her interpretation, whether a party to an executory contract gets to keep prepetition payments turns entirely on whether the contract is assignable, not on the benefit received from the contract by the bankruptcy estate. Further, contrary to Steege's argument, nothing limits the result Steege urges to cases in which an assumption order was entered in chapter 11. Bankruptcy courts considering preference suits and assumption orders in chapter 7 theoretically could reach different results applying Steege's analysis. Imagine a case in which a chapter 7 trustee assumes an assignable contract, and then brings a preference suit against the contracting party. As a matter of law, under Steege's interpretation, a trustee would be able to pursue both courses. Because the preference analysis requires the court to construct a hypothetical world at the time of the original petition, the court would be unable to consider what actually happened postpetition. In a case in which the value of the contract increased from the date of the bankruptcy petition to the date of assumption, the chapter 7 trustee would prevail in the preference suit even though the chapter 7 trustee assumed the contract.
 
 
 27
 C. Resolving the Conflict.
 
 
 28
 Were we to adopt Steege's position, we would open the door to possible abuses not contemplated by the bankruptcy code or the congressional intent behind § 547 and § 365. We are obligated to interpret statutes so as to avoid such results whenever possible. Butler v. Encyclopedia Brittanica, Inc., 41 F.3d 285, 294 (7th Cir.1994). Interpreting the language of the statutes in the light of the congressional purpose underlying each statute, we believe that the lower courts offer us a more reasonable approach.
 
 
 29
 The language and intent behind § 365 is decisive. The language of § 365(b)(1) is unequivocal. A party to an executory contract must be paid all amounts due him under the contract before the contract may be assumed. In drafting § 365(b)(1), Congress went further than requiring that the trustee guarantee payment for future performance under the contract. It required that the trustee guarantee payment of all amounts owed prior to assumption. If Congress had intended to deprive contracting parties of monies they received prepetition, why would Congress require that all defaults be cured prior to assumption? Serendipity would determine whether a contracting party is subjected to a preference suit. We believe Congress passed § 365 to insure that a contracting party is made whole before a court can force the party to continue performing with a bankrupt debtor. Permitting a preference suit after an assumption order would undermine that purpose.
 
 
 30
 Our interpretation is bolstered by § 365(e). The Bankruptcy Reform Act of 1978 changed the law regarding bankruptcy clauses.[4] Prior to the Act, bankruptcy clauses were deemed valid. Section 365(e) invalidates bankruptcy clauses. Noting that the parties no longer can contract freely to terminate their arrangement upon bankruptcy, both the House and Senate reports said: "If the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain." Senate Rep. No. 989, 95th Cong., 2nd Sess. 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845; H.R.Rep. No. 595, 95th Cong., 2nd Sess. 348 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05. We believe that this language is telling. Section 365 was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance. Given that the language of § 365 requires payment of all amounts in arrears, "full benefit of his bargain" must refer to the full amount due the contracting parties, not just the amount they are entitled to for future performance.
 
 
 31
 The congressional intent behind § 547 is consistent with this result. By retaining the monies paid to him prepetition, a party to an assumed contract does not receive more than other similarly situated creditors. Until the assumption decision is made, the "situation" of a party to an executory contract remains undetermined. As previously discussed, an assumption order effectively gives the contracting party a secured interest in the monies owed him. From the moment the assumption order is entered, the contracting party's interest is necessarily distinct from the interests of unsecured creditors.
 
 
 32
 An assumption order, therefore, is analogous to an abandonment order. See In re Lovitt, 757 F.2d 1035, 1041 (9th Cir.) (analogizing a rejection order to an abandonment order), cert. denied, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985). An assumption order divests the trustee of subsequent claims to monies paid under the contract whether they were paid prepetition or postpetition. Cf. Brown v. O'Keefe, 300 U.S. 598, 602-03, 57 S.Ct. 543, 546-47, 81 L.Ed. 827 (1937) (holding that an abandonment order divests the trustee of any claim to the abandoned property). Section 547 and § 365 are mutually exclusive avenues for a trustee. A trustee may not prevail under both. Nor may a subsequent trustee pursue one course, when her predecessor has pursued another.
 
 
 33
 Our decision is consistent with the holdings of other circuits. In Alvarado v. Walsh (In re LCO Enterprises), 12 F.3d 938 (9th Cir.1993), the ninth circuit considered whether a trustee is entitled to recapture pursuant to § 547 prepetition lease payments after the trustee assumed the lease pursuant to § 365. The ninth circuit reasoned that the Supreme Court's decision in Palmer Clay does not prohibit a court from considering the actual facts of the case in determining a creditor's classification. Id. at 942. The LCO Enterprises court determined that in conducting the hypothetical liquidation analysis under § 547(b)(5), a bankruptcy court is bound by the fact that the assumption order was entered. Id. A bankruptcy court may not rely on hypothetical analysis to conclude otherwise, because "the assumption of the leases in accordance with § 365(b) precludes the Trustee from attempting to recover those payments." Id. at 943.
 
 
 34
 In Seidle v. GATX Leasing Corp., 778 F.2d 659 (11th Cir.1985), the eleventh circuit considered whether a trustee is entitled to recapture pursuant to § 547 prepetition contract payments when the parties entered into a court approved stipulation pursuant to 11 U.S.C. § 1110. Under § 1110, a debtor may retain possession of equipment by curing defaults and making the required payments. Id. at 662. The eleventh circuit concluded that a trustee is precluded as a matter of law from bringing a preference suit after the court approved the stipulation:
 
 
 35
 A trustee's election to set aside alleged preferential payments would undermine the protection that section 1110 provides for creditors. Pursuant to the section 1110 stipulation, a creditor is entitled to unpaid pre-petition payments, as defaults; a trustee may not later thwart the effect of the statute by challenging the validity of these transfers as preferences.
 
 
 36
 Id. at 665.
 
 
 37
 Steege argues that in ruling against her, we create an even larger loophole. Debtors will be able to conspire with contracting parties to pay any defaults within ninety days of filing chapter 11. After filing bankruptcy, a debtor will be able to seek an assumption order, truthfully representing to the court that the executory contract is current but concealing the prepetition payments. Seeing no cause for concern, the bankruptcy court will enter a summary order granting the assumption without a hearing. Granting the assumption, however, will necessarily preclude subsequent trustees from pursuing the prepetition payments as preference payments even though the bankruptcy court was unaware of the prepetition payments and would not have issued the assumption order had the court known about the payments.
 
 
 38
 We understand Steege's concern. However, we think the result Steege predicts is highly unlikely. Steege's argument assumes that the bankruptcy judge is blissfully ignorant of the facts of the case. We strongly doubt that bankruptcy judges are so poorly informed. Steege's argument also assumes that the bankruptcy judge in deciding the assumption petition will give absolutely no consideration to the equities of the parties, the benefits to the estate from assumption, or the total amount due under the contract--including amounts paid 90 days prior to the bankruptcy petition. We find no evidence to suggest that bankruptcy judges operate mechanically, unable or unwilling to consider the facts underlying the petition before them.
 
 
 39
 Fraud by a party, or the intentional concealing of information from the court so as to improperly obtain an assumption order, is a very different matter. We need not adopt Steege's interpretation of the instant statutes, however, to prevent such abuse. Indeed, this court's prior holdings in conjunction with the Federal Rules already provide a means by which bankruptcy courts can prevent deception. "It is now well settled that a bankruptcy judge has the power to reexamine and revise an order which he entered during the pendency of bankruptcy proceedings." Matter of Lintz West Side Lumber, Inc., 655 F.2d 786, 789 (7th Cir.1981). A bankruptcy court retains the power to reconsider its order in the light of the trustee's facts and arguments. Id. In addition to the court's discretionary power, trustees may seek relief pursuant to Federal Rule of Civil Procedure 60(b). Id. Upon a showing that the parties obtained an assumption order by fraud, a bankruptcy court has the power to rescind the order.
 
 
 40
 Steege has not petitioned the bankruptcy court to set aside its assumption order. Nor has Steege claimed that either Playtex or Superior Toy misled the bankruptcy court. Rather, she asks us to remand this case for an evidentiary hearing to determine whether the bankruptcy court would have entered the assumption order had it known about the $46,063.30. Even assuming the court was misled, a § 547(b) preference suit is not the proper means to address the error. As we have said, § 547(b) and § 365 are mutually exclusive alternatives. She should have raised the issue independently with the bankruptcy court on a motion to reconsider the assumption order. Because the assumption order stands, Steege is barred from bringing a preference claim.
 
 
 41
 Steege also argues that she is entitled to an evidentiary hearing to determine whether the assumption order, by its own terms, permitted a subsequent preference suit. As our holding makes clear, the two remedies are mutually exclusive. Therefore, the language of the assumption order is irrelevant. Cf. In re LCO Enterprises, 12 F.3d at 943 (holding that the existence of an agreement between the parties regarding immunity from a § 547 action is irrelevant).
 
 
 42
 Finally, Steege alleges that the bankruptcy court erred in entering the assumption order because the licensing agreement is not an executory contract. The district court held that Steege's argument is barred by the doctrine of estoppel. We agree. The trustee's predecessor assumed the license agreement with court approval. Playtex honored the contract, and allowed Superior Toy to retain an exclusive license. The bankruptcy estate benefitted from the contract for almost two years. The trustee cannot now come forward and argue that the contract is not executory and that the payments to Playtex should be returned. To hold otherwise, without some allegation of improper conduct by the parties, would be unfairly prejudicial to Playtex.
 
 Conclusion
 
 43
 We hold that a chapter 7 trustee cannot bring a preference suit to recoup payments made pursuant to a validly assumed executory contract. The decision of the district court dismissing Steege's suit is
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Federal Bankruptcy Rule 7012 renders Federal Rule of Civil Procedure 12(b)(6) applicable to bankruptcy proceedings
 
 
 [2]
 Both parties agree that the prepetition payments to Playtex satisfy the first four requirements
 
 
 [3]
 An executory contract is a contract "on which performance remains due to some extent on both sides." 2 COLLIER ON BANKRUPTCY p 365.02 at 365-21 (15th ed. 1995)
 
 
 [4]
 A bankruptcy clause is a clause that immediately terminates a contract in the event that one party files bankruptcy