303 B.R. 728 (2004)
In re TELIGENT, INC., et al., Reorganized Teligent.
No. 01-12974.
United States Bankruptcy Court, S.D. New York.
January 8, 2004.
*729 *730 Savage & Associates, P.C., Denise L. Savage, JennyAnn Carles, of counsel, White Plains, NY, for Unsecured Claim Estate Representative of Teligent, Inc.
Kirkland & Ellis LLP, James H.M. Sprayregen, P.C., Jonathon S. Henes, Michael J. Frishberg, Matthew N. Kleiman, Anup Sathy, of counsel, New York City, for Reorganized Teligent.
MEMORANDUM DECISION DENYING ESTATE REPRESENTATIVE'S MOTION TO VACATE ORDER
STUART M. BERNSTEIN, Chief Judge.
The Unsecured Claim Estate Representative of Teligent Inc. (the "Estate Representative"), appointed in accordance with § 1123(b)(3) of the Bankruptcy Code, seeks to vacate an order, pursuant to Fed. R.Civ.P. 60(b)(6), entered prior to her appointment that authorized the assumption of an executory contract with CIGNA Healthcare ("CIGNA") (the "Assumption Order"). The Estate Representative seeks this relief, in part, because she has commenced an adversary proceeding against CIGNA to recover alleged preferences (the "Preference Action"). CIGNA filed a Motion to Dismiss the Preference Action citing the well established law that a preference action may not be maintained for payments made under assumed executory contracts. Kiwi Int'l Air Lines, Inc., 344 F.3d 311, 318 (3d Cir.2003); In re Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1172 (7th Cir.1996). On October 3, 2003, the Estate Representative filed a motion seeking to vacate the Assumption Order pursuant to Fed.R.Civ.P. 60(b)(6) on the grounds that "extraordinary circumstances" exist due to (i) the appointment of the Estate Representative after the Assumption Order was entered, (ii) a lack of business judgment on the part of the debtors in seeking to assume the CIGNA Contract in light of the potentially preferential transfers and (iii) the undue hardship on the unsecured creditors if the Estate Representative is denied the opportunity to pursue the Preference Action.[1] For the reasons that follow, the Estate Representative's motion to vacate the Assumption Order is denied.

*731 BACKGROUND
On May 21, 2001 (the "Petition Date") the debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Reorganized Teligent emerged form chapter 11 on September 6, 2002 upon confirmation of the Debtors' Third Amended Joint Plan of Reorganization (the "Plan"). The Plan provided for the appointment of an "Unsecured Claim Estate Representative." The Plan defines the Unsecured Claim Estate Representative as "[t]hat person appointed by the Creditors Committee to be the estate representative pursuant to section 1123(b)(3) of the Bankruptcy Code to pursue the Chapter 5 Causes of Action and determine the validity, priority and amount of the General Unsecured Claims." (Plan, at pg. 6.) Chapter 5 Causes of Action is defined under the Plan as "[a]ny and all of any Debtor's rights, claims, or causes under sections 542, 544, 545, 547, 548, 549, 550 and 552(b) of the Bankruptcy Code, whether known or unknown, in law, equity or otherwise, except to the extent waived or retained by the Debtors during the Chapter 11 Cases or pursuant to the Plan." (Plan, at pg. 2.)
A. CIGNA Contract
Prior to the Petition Date, the debtors and CIGNA entered into a contract, dated January 28, 1998, whereby CIGNA provided the debtors with employee health and dental insurance (the "CIGNA Contract"). In September 2001, the debtors retained Mark Lynne of Bolton Partners to act as the debtors' insurance broker (the "Insurance Broker"). Affidavit of Lynne M. Dumas, Director of Human Resources of Teligent, Inc., In Support of Reorganized Teligent's Objection to Motion and Application of the Unsecured Claims Estate Representative to Partially Vacate Order Of This Court Authorizing the Assumption of a Certain Executory Contract Between the Debtors and CIGNA Healthcare, dated October 30, 2003 ("Dumas Aff.") ¶ 7. In the first quarter of 2002, Teligent met with the Insurance Broker to discuss the CIGNA Contract and the possibility of obtaining coverage from alternate insurance providers. Id. The Insurance Broker was unable to find similar coverage with an alternative insurance carrier, given the debtors' chapter 11 filing and the data provided by the debtors, including an extremely high percentage of COBRA participants. Id. As a result, in February 2002, the debtors renewed the CIGNA Contract for a period of six months, which was the longest renewal period to which CIGNA would agree. Id. In the second quarter of 2002, the debtors again contacted the Insurance Broker regarding the possibility of obtaining coverage from an alternate insurance provider. The Insurance Broker was unable to find another provider. As a result, the debtors renewed the CIGNA Contract again. (Dumas Aff. ¶ 8.)
B. Assumption of the CIGNA Contract
Given the necessity of the coverage provided under the CIGNA Contract to the debtors' ongoing operations and its continued inability to obtain such coverage from an alternate provider, the debtors determined that it was in the best interest *732 of the debtors' estates and their creditors to assume the CIGNA Contract. (Dumas Aff. ¶ 9.) On September 4, 2002, prior to the confirmation hearing, the debtors filed a motion to assume several hundred executory contracts and unexpired leases, including the CIGNA Contract (the "Assumption Motion"). The Assumption Motion did not set forth a business justification for the assumption of the CIGNA Contract, in particular. It stated that "The assumption of the Assumed Agreements is supported by the Debtors' sound business judgment and is in the best interests of their estates and creditors. Provided the Court confirms the Plan, the Debtors will emerge from chapter 11 as Reorganized Teligent, who will not be able to operate without the Assumed Agreements. The Assumed Agreements consist of office leases, site leases, switch site leases and customer contracts that would be essential for Reorganized Teligent to continue operating its business." (Assumption Motion ¶ 7.) The Assumption Motion did not provide any detail regarding the basis for the exercise of business judgment with respect to individual contracts. There were no objections to the assumption of the CIGNA Contract. The Court entered an order authorizing Reorganized Teligent to assume the CIGNA Contract on October 18, 2002 (the "Assumption Order").
[In November 2002, at Reorganized Teligent's request, the Insurance Broker again attempted to secure coverage with an alternate provide to no avail. (Dumas Aff. ¶ 12.) Therefore, Reorganized Teligent again renewed the CIGNA Contract. (Dumas Aff. ¶ 12.) [Note-this support inability to find alternate coverage, but it does not necessarily fit here]]
From September 1, 2002 through October 31, 2003, CIGNA processed approximately 5811 claims arising under the CIGNA Contract. (Affidavit of Anthony J. Crean, dated December 3, 2003 ("Crean Aff.") ¶ 2.) During this period, CIGNA issued approximately 4230 checks in the aggregate amount of $1,016,926 on account of those claims. (Crean Aff. ¶ 2.)

DISCUSSION
As a backdrop to the analysis of the applicability of Fed.R.Civ.P. 60(b)(6) to the instant matter, it is important to recognize the limited scope of the Estate Representative's rights. Under the Plan, she is charged with pursuing the Chapter 5 Causes of Action and determining the validity, priority and amount of the General Unsecured Claims. (Plan, pg. 6.) However, the Plan limits Chapter 5 Causes of Action to the "Debtor's rights, claims or causes of action . . . except to the extent waived . . . by the Debtors during the Chapter 11 Cases." (Plan, pg. 2.) Accordingly, pursuant to the Plan that created her, the Estate Representative is limited to pursue only those claims that belonged to the debtors and were not waived or retained by the debtors. See In re XO Communications, Inc., 301 B.R. 782, 798 (Bankr.S.D.N.Y.2003).
In addition to the limitations on the Estate Representative's rights contained within the Plan, the case law also supports the proposition that her rights are limited as the successor to the debtors. A later appointed trustee, or in this case Estate Representative, is bound by the acts of the debtor in possession and by the decisions of the court, even absent her presence at those proceedings. Armstrong v. Norwest Bank, Minneapolis, N.A., 964 F.2d 797, 801 (8th Cir.1992). Any other suggestion, "would be chaos among debtors-in-possession and their creditors. Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without *733 out fear of retribution or reversal at the hands of a later appointed trustee." Id. at 801. See also, In re Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1176 (7th Cir.1996)(Chapter 7 trustee was barred by doctrine of equitable estoppel from arguing that bankruptcy court erred in entering assumption order); Feldman v. Trans-East Air, Inc., 497 F.2d 352, 356 (2d Cir.1974)(the doctrine of collateral estoppel prevents a bankruptcy trustee from reopening a case to insist on performance of an executory contract that had been previously rejected).
The Estate Representative, as a successor to the debtors, is clearly bound by the debtors actions and barred by the doctrine of estoppel from challenging the validity of those actions that don't serve her particular interests. Nonetheless, because it is within the court's equitable powers to reconsider its prior judgments and orders, I will address whether vacatur of the Assumption Order is warranted under the circumstances.
Federal Rule of Civil Procedure 60(b)(6), incorporated by Bankruptcy Rule 9024, provides in pertinent part that "[o]n motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons: (6) any other reason justifying relief from the operation of the judgment". Although subsection (6) "should be liberally construed when substantial justice will thus be served," Quevedo v. Postmaster, United States Postal Service, 774 F.Supp. 837, 839 (S.D.N.Y.1991), the rule requires that the movant demonstrate extraordinary circumstances or an extreme and undue hardship. In re Emergency Beacon Corporation, 666 F.2d 754, 759 (2d Cir. 1981); Key Mechanical Inc. v. BDC 56 LLC, No. 01 Civ. 10173(RWS), 2002 WL 467664, *4 (S.D.N.Y. March 26, 2002). A fear that creditors may not get as much money as they claim they are owed does not create an "extreme hardship" under Rule 60(b)(6). See Key Mechanical Inc. v. BDC 56 LLC, 2002 WL 467664 at *4.
The Estate Representative has not met her burden of establishing extraordinary circumstances or undue hardship under the standards applied under Rule 60(b)(6). A debtor's decision to assume or reject an executory contract based on its business judgment will not be altered absent a showing of bad faith or an abuse of discretion. In re G Survivor Corp., 171 B.R. 755, 757-58 (Bankr.S.D.N.Y.1994). Although, the Assumption Motion did not set forth a record specifically addressing the CIGNA Contract, it did state that the hundreds (if not thousands) of agreements being assumed were essential to the debtors' reorganization. Furthermore, the debtors have established, through the Dumas Affidavit, that in fact, the decision to assume to the CIGNA Contract was made only after they had unsuccessfully attempted to procure alternate insurance coverage. That CIGNA received potentially preferential payments during the 90 day period preceding the Petition Date, does not of itself establish that the debtors failed to exercise business judgment in determining to assume the contract. There is nothing extraordinary about a party to an assumed executory contract becoming immune to a preference action to recover what otherwise have been required to be paid as a cure payment. The possibility that the Preference Action could result in a greater recovery for unsecured creditors does not constitute "extraordinary circumstances" or "undue hardship" under Rule 60(b)(6). Finally, the consequences of "free, calculated, deliberate choices" do not constitute extraordinary circumstances. Manning v. Dubois, No. 95 Civ. 1806, 1996 WL 153950, *2 (S.D.N.Y. April 2, 1996). Here, the debtors made the deliberate choice to assume the CIGNA Contract after considering its *734 other options. The Estate Representative, as successor to the debtors, is bound by that choice.
Apart from requiring extraordinary circumstances or undue hardship, a motion under Rule 60(b)(6) must also be made within a "reasonable time." What qualifies as a "reasonable time" depends on the facts of a given case, including the length and circumstances of the delay, intervening rights, the possibility of prejudice to the opposing party and the desirability that judgments be final. In re Emergency Beacon Corporation, 666 F.2d at 759; McKenna v. Ward, No. 88 Civ. 0513, 1997 WL 66779, *5 (S.D.N.Y. Feb. 18, 1997); In re Krautheimer, 210 B.R. 37, 45 (Bankr.S.D.N.Y.1997). It is well established that bankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate a previous order so long as no intervening rights have attached in reliance on the order. In re Maxwell Newspapers, Inc., 170 B.R. 549, 550 (S.D.N.Y. 1994); see also In re Krautheimer, 210 B.R. 37, 45 (Bankr.S.D.N.Y.1997). Here, over a year has passed since the Assumption Order was entered. Over one million dollars has been paid to satisfy approximately 5,811 claims made under the CIGNA Contract during this period. Clearly, both CIGNA and those covered under the CIGNA Contract have relied on the Assumption Order and continued enforceability of the CIGNA Contract. Under these circumstances, where intervening rights have vested in reliance on an order, the reasonable time requirement under Rule 60(b)(6) is not satisfied. Accordingly, for the reasons stated, the Estate Representative's motion to vacate the Assumption Order is denied.
Settle order on notice.
NOTES
[1] The Estate Representative raises an argument for the first time in her Reply to the Reorganized Teligent's and CIGNA Healthcare's Respective Objections to the Representative's Motion to Vacate that the insurance policy underlying the Preference Action was not assumed pursuant to the Assumption Order, but rather was a separate post-petition contract. I will not consider this argument. It is well settled in this Circuit that the court will not normally consider arguments raised for the first time in a reply brief. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999); Keefe v. Shalala, 71 F.3d 1060, 1066 n. 2 (2d Cir.1995). Here, I do not have the entire CIGNA Contract in the record and the objecting parties, Reorganized Teligent and CIGNA, have not had the opportunity to respond to the Estate Representative's argument. Furthermore, as discussed below, because the Estate Representative is a successor to the debtors' rights, any argument that the CIGNA Contract is not assumable, was waived by the debtors when they successfully sought and obtained the Assumption Order. The Estate Representative is bound by that waiver to the same extent that the debtors would be bound. For purposes of this motion, I will assume that the CIGNA Contract was the contract that was assumed under the Assumption Motion.