In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1719

IN RE:

ABC-NACO, INC.,

*Debtor-Appellee,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ABC-NACO, INC.,

*Appellee.*

APPEAL OF:

SOFTMART, INCORPORATED.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 274—**George W. Lindberg**, *Judge.*

ARGUED OCTOBER 19, 2006—DECIDED APRIL 9, 2007

Before RIPPLE, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* In the summer of 2001, ABC-Naco, Incorporated, remitted four payments totaling $98,641.26 to Softmart, Incorporated, in partial payment for Microsoft software and equipment that ABC-Naco had purchased from Softmart in 1998. Less than 90 days later, ABC-Naco filed for bankruptcy. The unsecured creditors of

ABC-Naco sought return of the payments to the bank-ruptcy estate, alleging that it constituted a preferential transfer. The bankruptcy court held that the payments were not a preferential transfer, but the district court reversed. ABC-Naco appeals. We affirm the district court's decision that the payments were preferential and should be returned to the bankruptcy estate for the benefit of the unsecured creditors.

**I.**

Softmart's business included selling computers and Microsoft software as a "large account reseller." In this capacity, in 1998 Softmart entered into a purchase agree-ment with ABC-Naco. In the agreement, ABC-Naco agreed to purchase 700 computers and licenses for Microsoft software on each computer. The agreement further pro-vided that ABC-Naco would make equal, quarterly pay-ments of $47,127.50 for three years. In accordance with Microsoft policy, ABC-Naco also simultaneously signed two agreements with Microsoft that, in relevant part, provided Microsoft with the right to revoke the licenses if ABC-Naco failed to pay Softmart. Softmart was not a signatory to those two agreements.

Apparently ABC-Naco made regular payments with-out incident until the third year. In the third year, 2001, ABC-Naco did not make the April payment of $47,127.50 until August 8, 2001. ABC-Naco also paid the July invoice of $47,127.50 on September 6, 2001. In addition, ABC-Naco paid Softmart $992.28 on August 10, 2001, and $3,393.98 on August 15, 2001, but it is unclear from the record the purpose of these payments. Shortly thereafter, on October 18, 2001, ABC-Naco filed for bankruptcy.

Because the four payments noted above, which total $98,641.26, were made within ninety days of ABC-Naco's bankruptcy filing, the committee of unsecured creditors of ABC-Naco claimed that the payments were preferential payments precluded by bankruptcy law, and requested that Softmart return the funds to the bankruptcy estate.

After ABC-Naco filed for bankruptcy, but before the bankruptcy court ruled on whether the payments were preferential, Meridian Rail Corporation purchased substantially all of ABC-Naco's assets. The bankruptcy court approved that transaction, but the purchase agreement between ABC-Naco and Softmart did not appear among the contracts that the bankruptcy court approved for Meridian's assumption and assignment. Nonetheless, a director at ABC-Naco, without consulting counsel, signed a letter at Meridian's request stating that the assets sold to Meridian included the Softmart purchase agreement. Meridian made a final payment to Softmart of approximately $45,000 to fulfill the obligations under the purchase agreement.

After Meridian made the final payment, the bankruptcy court held a hearing on the unsecured creditors' committee's motion to set aside ABC-Naco's payments to Softmart as preferential. Softmart responded that ABC-Naco's payments were not preferential because ABC-Naco received new value in exchange for the payments. Specifically, Softmart argued that ABC-Naco received new value in its right to continue using the software and to then assign the software to Meridian after bankruptcy. Since new value was provided, Softmart argued, it was entitled to keep the payments. The bankruptcy court agreed that Softmart provided new value for the payments and entered judgment for Softmart. The creditors appealed to the dis-

trict court, which reversed the bankruptcy court's judgment. The district court concluded that Softmart's forbearance from reporting a lack of payment to Microsoft did not constitute new value and that the payments totaling $98,641.26 constituted a preferential transfer that Softmart must return to the bankruptcy estate. The district court remanded the case to the bankruptcy court, which further awarded costs as well as pre- and post-judgment interest. Softmart appeals.

## II.

In this bankruptcy appeal, we review questions of law de novo and the bankruptcy court's findings of fact for clear error. *In re Salem*, 465 F.3d 767, 773 (7th Cir. 2006) (citation omitted). Under the bankruptcy code, a trustee may recover certain transfers or payments made by a debtor before bankruptcy. Specifically, 11 U.S.C. § 547(b) provides that to avoid a transfer as preferential, a "trustee must show that the transfer (1) was 'to or for the benefit of a creditor'; (2) was 'for or on account of an antecedent debt'; (3) was 'made while the debtor was insolvent'; (4) was made on or within 90 days before the debtor filed his bankruptcy petition; and (5) enabled the creditor to receive more than the creditor would have received if the debtor had not made the transfer." *In re Energy Coop. Inc.*, 832 F.2d 997, 1000 (7th Cir. 1987) (quoting 11 U.S.C. § 547(b)). However, "[n]ot all transfers that meet § 547(b)'s criteria are avoidable. Section 547(c) provides six exceptions to the avoidable preference provision." *Id.* at 1000. In

this case, Softmart relies on only one exception,[1] specifically the "new value" exception contained in 11 U.S.C. § 547(c)(4). That exception provides that even if a payment is considered preferential, a creditor may retain the payment if, "after such transfer [of funds], such creditor gave new value to or for the benefit of the debtor." 11 U.S.C. § 547(c)(4). "New value" is defined by statute as "money or money's worth in goods, services, or new credit, or release . . . but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

On appeal, Softmart argues that ABC-Naco received new value through its continued use of the equipment and software, citing cases outside this circuit. For example, the Eighth Circuit held that a college's continued use of leased real property constituted new value. *S. Tech. Coll., Inc. v. Hood*, 89 F.3d 1381, 1384 (8th Cir. 1996) ("Each month, a lessee receives new value from its lessor when it continues to use and occupy the rented property."). This continued use "facilitated [the college's] continued operation"

---

[1] In its reply brief, Softmart also claimed that ABC-Naco's payments were not preferential because the creditors failed to establish one of the five criteria for preferential transfers. In particular, Softmart claimed that the creditors failed to show that the payments allowed Softmart to receive more money than it would if the bankruptcy had been filed "under Chapter 7," if "the transfer had not been made," or if Softmart "received payment . . . to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5)(A)-(C). Softmart, however, did not raise this argument or even cite section 547(b)(5) in its opening brief, and therefore it has forfeited this argument. *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1035 n.2 (7th Cir. 2005) (citing *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 665-66 (7th Cir. 1995)).

allowing the college to generate income that "replenished the estate, increased [the college's] chances of survival, and benefitted all of [the college's] creditors." *Id.* Softmart also cites to *In re Jet Florida System, Incorporated*, 841 F.2d 1082, 1084 (11th Cir. 1988), in which the Eleventh Circuit held that a debtor did not receive new value for its real estate lease payments because the debtor did not use the property during the preference period. Softmart contends that the reasoning of *In re Jet Florida System* indicates that new value would exist if the property had been used in the preferential period. Finally, Softmart relies on a bankruptcy court decision from the district of Delaware, which was affirmed in an unpublished district court decision, in which a debtor paid a monthly licensing fee to use certain trademarks. *In re Discovery Zone, Inc.*, 300 B.R. 856, 860-61 (Bankr. D. Del. 2003), aff'd, No. Civ. A.03-1034, 2004 WL 2346002 at *2-3 (D. Del. Oct. 5, 2004). The courts held that the continued use of the trademarks constituted new value, allowing the creditor to retain the payments made during the preferential period. *Id.*

Softmart's reliance on the above cases is misplaced because unlike those cases, in this case, Softmart did not have the right to interfere with ABC-Naco's continued use of the Microsoft software. Under the purchase agreement, Softmart had no right to revoke the licenses upon default, unlike the landlords of the real estate or the licensor of trademarks. Rather, the Enrollment Agreement between ABC-Naco and Microsoft confirmed that Softmart, as a large account reseller of Microsoft software, had "no authority to bind or impose any obligation or liability whatsoever upon" Microsoft. Moreover, the purchase agreement between ABC-Naco and Softmart provided that if ABC-Naco failed to pay Softmart, Microsoft re-

tained the "option" to "terminat[e] this Enrollment Agreement, revo[ke] or cancel[ ] all licenses and rights to which [ABC-Naco] is entitled . . . and at the option of [Microsoft], terminat[e] the Master Agreement." The right of revocation remained in Microsoft's discretion and Softmart had no authority to revoke the licenses.

Essentially, Softmart asks us to conclude that ABC-Naco's payments were necessary to prevent Softmart from reporting a missed payment to Microsoft, so that Microsoft in turn could exercise its discretion to terminate the agreement or revoke the licenses. In other words, Softmart claims that ABC-Naco received new value for its payments in Softmart's forbearance from reporting a breach to Microsoft. Such a forbearance does not constitute new value. *In re Jet Fla. Sys.*, 841 F.2d at 1084; *In re Jones Truck Lines, Inc.*, 130 F.3d 323, 327 (8th Cir. 1997) (noting that "such forbearance [from terminating benefits] is usually not new value"); *In re Air Conditioning, Inc.*, 845 F.2d 293, 298 (11th Cir. 1998) ("Forbearance from exercising pre-existing rights does not constitute new value under section 547(a)(2)." (citations omitted)). The District of Columbia Circuit provided a clear rationale for determining that such forbearance should not constitute new value, writing:

> We think it plain that a payment to an unsecured creditor in return for that creditor's agreement not to force the debtor into bankruptcy can never be treated as new value. Otherwise the preference provisions of the bankruptcy code would be nullified, because all creditors could extract payments within the preference period under that exception. Similarly, an agreement by an undersecured creditor to forgo his right to foreclose on collateral could not be treated as new

value without unfairly prejudicing general creditors. It is a basic axiom of bankruptcy law that a secured creditor is protected only to the extent of his security interest. If an agreement not to foreclose—to forbear—were treated as new value, however, then a debtor's payment of the entire debt (both secured and unsecured portions) in return for that agreement could be sheltered from the Code's preference provisions. The undersecured creditor, in other words, could leverage his security to cover the unsecured portion of the debt. . . . Therefore forbearance alone—at least of this kind—cannot constitute new value without undermining basic premises of the Code.

*Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 (D.C. Cir. 1986) (footnote omitted). Similarly, we conclude that Softmart's forbearance in not reporting a breach to Microsoft could not constitute new value. Softmart had no authority to revoke the licenses and therefore Softmart did nothing to provide new value to ABC-Naco.[2]

Softmart also claims that it cannot be required to return the payments to the bankruptcy estate because its con-

---

[2] Because Softmart lacked the authority to revoke the licenses, we need not consider whether a creditor who does possess the right to revoke a license grants "new value" under 11 U.S.C. § 547(c)(4) by forbearing to revoke the right. For the same reason, we need not decide whether a license could constitute "money or money's worth in goods, services, or new credit" under 11 U.S.C. § 547(a)(2), or whether the payments under the purchase agreement were analogous to lease payments for the future use of the software, or installment payments for a license already sold–a distinction that could prove important in assessing the presence of new value.

tract with ABC-Naco had been assumed by Meridian, and under the bankruptcy code an executory contract cannot be assumed unless all money due under the contract is paid. 11 U.S.C. § 365; *see also In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996). In *In re Superior Toy*, this court held that payments made on executory contracts that are assumed pursuant to 11 U.S.C. § 365 cannot also be avoidable preferences: "[s]ection 547 and § 365 are mutually exclusive avenues for a trustee." *In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d at 1174. Applying this principle, Softmart argues that since the purchase agreement was an executory contract assumed by Meridian, Softmart is entitled to retain the payments that were due prior to the assumption.

"An executory contract is a contract 'on which performance remains due to some extent on *both* sides.' " *In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d at 1172 n.3 (emphasis added) (quoting 2 *Collier on Bankruptcy* ¶ 365.02 at 365-21 (15th ed. 1995)). As an initial matter, we note that the purchase agreement between Softmart and ABC-Naco is arguably not an executory contract, as Softmart had no further obligation under the contract; ABC-Naco alone bore the obligation to continue paying for software and computers that had already been delivered. *See, e.g., Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) ("[T]he typical executory contract . . . requires [ ] affirmative performance in the future."). If the purchase agreement is not an executory contract, it could not be assumed by Meridian, and therefore the unsecured creditors could seek the return of the money as preferential payments.

Regardless, even assuming that the purchase agreement is an executory contract, Softmart's argument still fails because the bankruptcy court never authorized an

assignment of the purchase agreement to Meridian. The assumption or assignment of an executory contract is "subject to the court's approval." 11 U.S.C. § 365(a) (assumption); 11 U.S.C. § 365(f)(2)(A) (assignment). In this case, the bankruptcy court never approved of the assumption or assignment of the purchase agreement. Softmart, in its opening brief, concedes that the purchase agreement at issue was struck from the order assuming and assigning various contracts to Meridian. In the context of the preference hearing, the bankruptcy court made an oral factual finding that Meridian continued to use the software and licenses and had effectively assumed the contracts. This finding, to the extent that it contradicts the bankruptcy court record, is clearly erroneous; the assumption was never approved by the bankruptcy court. As this court has previously noted, " '[a]ssumption or adoption of the contract can only be effected through an express order of the judge.' " *In re Whitcomb & Keller Mortg. Co.*, 715 F.2d 375, 380 (7th Cir. 1983) (quoting *In re Am. Nat'l Trust*, 426 F.2d 1059, 1064 (7th Cir. 1970) (quoting 6 *Collier on Bankruptcy* 576-80 (14th ed.))). Since the purchase agreement was not assumed, the unsecured creditors were not precluded from seeking the return of the payments as preferential transfers, and, as discussed above, because ABC-Naco did not receive new value, the unsecured creditors may recoup the payments.

**III.**

Because ABC-Naco did not receive new value in exchange for its payments to Softmart, the $98,641.26 in payments constituted preferential transfers which must be returned to the bankruptcy estate. Accordingly, we AFFIRM the judgment of the district court in favor of the unsecured creditors of ABC-Naco.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
