In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4749

IN RE

  GLOBE BUILDING MATERIALS, INC.,

*Debtor.*

GORDON E. GOUVEIA, Chapter 7 Trustee of
Globe Building Materials, Inc.,

*Plaintiff-Appellee,*

*v.*

The RDI GROUP d/b/a Reichel & Drews, Inc.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 05-cv-269—**Rudy Lozano**, *Judge.*

ARGUED SEPTEMBER 19, 2006—DECIDED MAY 4, 2007

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In late 1999, Globe Building
Materials, Inc. ("Globe"), a roofing products manufacturer,
asked The RDI Group, Inc. ("RDI") to submit a proposal
for a custom-built equipment line for use in manufactur-
ing laminated roofing products. RDI responded positively,
and in early 2000, Globe and RDI entered into a contract
for the line. RDI set to work, but when it was almost

finished, Globe filed for bankruptcy. This case arose as an adversary proceeding brought by Globe's bankruptcy trustee against RDI, in which the trustee sought to recover Globe's last payment to RDI on the ground that it was made during the preferential period before Globe's bankruptcy filing. RDI resisted, claiming that it was entitled to the "new value" affirmative defense under 11 U.S.C. § 547(c)(4).

The bankruptcy court held that RDI's delivery of certain components of the equipment line during the preference period was not enough to entitle it to the benefit of the new value exception. The court accordingly ruled that the trustee was entitled to recover the payment that RDI had received from Globe during the preference period. The district court affirmed, and RDI has now appealed to this court. We too conclude that no new value passed to Globe when RDI delivered the materials in question, and we therefore affirm.

# I

Thanks to a stipulation from the parties, the facts of this case are largely undisputed. RDI is in the business of manufacturing custom-built equipment for producing asphalt-based products, such as shingles. In early 2000, Globe and RDI entered into a contract for an equipment line to produce laminated shingles. The line used a number of component machines which, when linked together properly, resulted in an overall machine suitable for making the product. As amended, the contract stated a single price for the entire (assembled) machine of $4,210,745. That money was to be paid in stages, according to a schedule set forth in the contract. Approximately 10% of the contract price was due over a three-month period: the agreement called for a payment of $100,000 on Janu-

ary 28, 2000; a payment of $50,000 on February 14, 2000; and a payment of $258,000 on February 29, 2000.

The next 80% of the price was due in monthly installments beginning on March 31, 2000; the final 10% was due "upon start-up or 90 days of shipment." The payment obligation was not tied to RDI's delivery of any specific system components. Instead, the initial contract obligated RDI to deliver parts as they became available, beginning in September 2000. In August 2000, the parties agreed to a delivery schedule in which they scheduled delivery of various components for the following dates in the final four months of 2000: September 8, September 15, October 20, October 27, November 3, November 17, November 22, December 1, December 8, December 15, December 22 and December 29. Thus, except for the final payment of the last 10% and final delivery, the payment schedule and delivery schedule were not coordinated, and no payments were tied to specific deliveries. In fact, as this account demonstrates, substantial payments were to be made before any deliveries took place; many of the high-value components were supposed to be delivered near the end of the payment schedule.

Globe began its payments in late December 1999, but it never quite achieved the regular schedule that the contract had contemplated. It came close, however, as the following table shows:

| Actual Date of Payment | Actual Amount of Payment |
|---|---|
| December 21, 1999 | $50,000 |
| February 14, 2000 | $50,000 |
| February 15, 2000 | $50,000 |
| February 29, 2000 | $258,095 |
| May 5, 2000 | $250,000 |
| June 9, 2000 | $1,026,397.72 (wire) |
| July 18, 2000 | $420,804 |
| August 7, 2000 | $420,804 |
| September 19, 2000 | $420,673 |
| September 19, 2000 | $419,891 |
| November 2, 2000 | $419,891 |
| Total | $3,786,555.72 |

By the end of October 2000, Globe had fallen a month behind on its installments, but as of November 2, 2000, it had paid RDI nearly 90% of the total contract price. RDI's deliveries proceeded more or less on schedule, with components being delivered beginning on October 2, 2000, and continuing through January 18, 2001. As RDI's production of the equipment line neared an end, Globe found itself increasingly stressed financially. Globe did not inform RDI of its financial difficulties.

The payment at issue in this litigation was the one for $419,891.08 that Globe made to RDI on November 2. As contemplated, this represented approximately 10% of the

contract price of the equipment line; it was supposed to be the second-to-last scheduled payment under the contract. In fact, it wound up being the last one, because Globe never paid the last 10% of the contract price. As of the same date, RDI had shipped, or had offered to ship, 55% of the component machinery to Globe. Not long after it received the November 2 payment, RDI completed its production of the equipment line at a direct cost of $276,270. It shipped some of that equipment to Globe and offered to ship the rest. For reasons that are not apparent in this record, Globe asked RDI to hold off actual delivery on some of the components. Both parties agree, however, that RDI fulfilled its delivery obligations by making the components available to Globe even though Globe never physically took possession of the full line.

On January 19, 2001, everything changed when Globe filed for bankruptcy and abandoned its plans to use the equipment line. Globe's bankruptcy trustee, Gordon E. Gouveia, sought to recover Globe's November 2 payment to RDI, on the straightforward ground that the payment was made on or within the 90-day period before Globe filed its bankruptcy petition, see 11 U.S.C. § 547(b), and was otherwise eligible for avoidance. RDI took the position that it was entitled to keep the money because the payment was made for a debt "incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," or, in the alternative, it was for "new value." See 11 U.S.C. §§ 547(c)(2), (4). Neither the bankruptcy court nor the district court agreed with these arguments. On appeal, RDI presses only its new value argument.

## II

Under the Bankruptcy Code, the trustee is not entitled to avoid a transfer

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor . . . .

11 U.S.C. § 547(c)(4). The Code defines "new value" as

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

The critical issue here, as the bankruptcy judge recognized, is whether the components that RDI delivered after November 2 provided new value to Globe. RDI claims that the district court erred in its "new value" analysis in two respects: first, by concluding that a party does not provide "new value" when it furnishes something of value under a pre-existing agreement with the debtor; and second, by ruling that a party does not provide "new value" when the debtor does not use the transferred item in the manner that the debtor intended when it first sought the item. We address these two arguments in turn.

**A**

RDI argues that Congress chose not to exclude existing contractual obligations from its definition of "new value"

in the Bankruptcy Code. We are not sure how it gleans that interpretation from the language of the statute, which we have reproduced above. To insist that "new value" be "new" is not reading an additional requirement into the statutory definition. As the trustee correctly points out, Congress intended the definition of "new value" to codify the principle of consideration from contract law. *In re Spada*, 903 F.2d 971, 976 (3d Cir. 1990). That familiar principle requires "consideration" to be something that the promisor is not already obliged to give to the promisee (that is, something additional or new); the "[p]erformance of a legal duty owed to a promisor . . . is not consideration." Restatement (Second) of Contracts § 73.

As of the beginning of November 2000, RDI already had an obligation to deliver the portion of the line equipment to Globe that it sent during November, and Globe already had an obligation to make its scheduled payment on the contract. Those obligations gave rise to a pre-existing set of possible remedies. If Globe had not made its November 2, 2000, payment, RDI could have availed itself of one of the remedies the Indiana version of the UCC recognizes, such as withholding delivery of additional goods. See IC § 26-1-2-703 (UCC § 2-703); see also Restatement (Second) of Contracts § 237. If RDI had learned of Globe's financial difficulties, then RDI could have suspended delivery until it received assurances from Globe that Globe was prepared to fulfill its own contractual obligations. See IC § 26-1-2-609(1) (UCC § 2-609(1)). Or if Globe had told RDI that it would be unable to make the final payment under the contract, this anticipatory repudiation would have entitled RDI either to resort to any remedy for breach of contract or to suspend its own performance (here, delivery of goods). See IC § 26-1-2-610 (UCC § 2-610); compare *Central Trust Co. of Ill. v. Chicago Auditorium Ass'n*, 240 U.S. 581, 589 (1916) (holding that "[w]here a party bound

by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended").

All of this goes to show that both Globe's obligation to pay and RDI's obligation to deliver the goods were anything but "new" in November 2000. Indeed, in analyzing a distinct "new value" argument in a bankruptcy appeal, this court recently concluded that a creditor's ability to resort to other remedies or actions if a debtor does not make required payments under a contract does not mean that the debtor has received "new value" in return for payments made. *In re ABC-Naco, Inc.*, 2007 WL 1040242, *3 (7th Cir. Apr. 9, 2007).

RDI makes much of the statutory language defining "new value," but this definition does not help it. "New value" does not include an obligation substituted for an existing obligation. In this connection, it is important to look at the particular contract between these two parties. It was one unified contract, for more than $4 million, for the delivery of a single complex equipment manufacturing line. The fact that the parties structured both payment and delivery obligations under the contract to extend over a period of time does not transform each payment, or each delivery of goods, into an independent transaction. If RDI had decided to furnish something outside the confines of the contract to Globe, within the preference period, and Globe had paid for it, we would have a different case. If RDI and Globe had agreed to a straightforward installment contract, our analysis would again be different. But under the contract the parties actually had, RDI's delivery during the preference period of equipment components it was obliged to furnish does not constitute "new value."

**B**

The trustee also argues that the equipment delivered in November did not replenish the debtor's estate and thus cannot be considered as some type of offset to Globe's payment. We would only have to reach this point if we thought that the equipment qualified as "new value." Because we have rejected that argument, we make only a few comments about this alternate ground.

In assessing whether a creditor has provided "new value" to a debtor, courts sometimes ask whether the preference payment being avoided has been "repaid to the bankruptcy estate," *In re Prescott*, 805 F.2d 719, 731 (7th Cir. 1986), that is "whether the new value replenishes the [debtor's] estate." *Kroh Bros. Dev. Co. v. Cont'l Constr. Eng'rs, Inc.*, 930 F.2d 648, 652 (8th Cir. 1991). RDI contends, in effect, that Globe's payment to it did not reduce the debtor's estate at all, because the equipment it received was the exact equivalent of the money it paid to RDI. If that were true, and the costs of producing the equipment line was the proper measure of the value received by Globe, then there would be no net gain to RDI for the trustee to recoup in a preference action. The trustee argues, however, that Globe was never in a position to use the equipment line. The value of the November shipment to Globe was thus either zero or at most whatever Globe recovered by selling portions of the equipment line at auction.

Our real problem with this argument is that it was never developed properly. We know that RDI delivered nearly all the components of the equipment line to Globe. We also know that RDI attempted and offered to deliver the rest, and refrained from doing so only at Globe's insistence. In principle, when a debtor takes possession of goods from a creditor during the preference period, the value of those goods is measured at the time the property is transferred to the debtor. *In re Robinson Bros. Drilling*,

877 F.2d 32, 33 (10th Cir. 1989). Applying this principle to RDI's delivery of the equipment line, however, we are left in a factual vacuum. RDI claims that the equipment line was ready for installation and use prior to Globe's bankruptcy petition. The trustee asserts this was not the case. No one ever resolved this dispute, and it appears that the estate benefitted from the auction of the equipment. Under the circumstances, we see no need to resolve the question whether Globe ended up using the equipment in the way it had originally planned, or what difference it would make if it did not.

### III

In the end, RDI is in the same position as any creditor that receives a payment from a debtor on a pre-existing obligation during the preference period. Perhaps RDI wishes that it had not delivered those goods in November, but it had been under a duty to deliver them since the contract was signed in early 2000. The district court correctly decided that the trustee was entitled to recover the payment Globe made to RDI during the preference period, and RDI must now await compensation along with the rest of Globe's creditors. We AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*