In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-3384

IN RE: ALGOZINE MASONRY RESTORATION, INC.,

*Debtor.*

ALGOZINE MASONRY RESTORATION, INC.,

*Debtor-Appellant.*

*v.*

LOCAL 52 CHICAGO AREA JOINT WELFARE COMMITTEE FOR THE
POINTING, CLEANING AND CAULKING INDUSTRY, *et al.*,

*Creditors-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 19-cv-00145-TLS — **Theresa L. Springmann**, *Judge*.

_____

ARGUED MAY 19, 2021 — DECIDED JULY 26, 2021

_____

Before WOOD, ST. EVE, and KIRSCH, *Circuit Judges*.

WOOD, *Circuit Judge*. Employee benefit plans come in many shapes and sizes. Broadly speaking, some focus on retirement, and others focus on welfare benefits such as health care and disability. If the sponsoring employer falls on hard times and files for bankruptcy, section 507 of the Bankruptcy

Code affords priority status up to a specified point to certain types of unsecured claims, including claims for unpaid contributions to an employee-benefit plan. 11 U.S.C. § 507(a)(5). The question before us concerns whether the priority limitation found in section 507(a)(5) applies to each fund that seeks unpaid contributions, or if the claims of all funds sponsored by the bankrupt employer must be aggregated.

**I**

Algozine Masonry Restoration, Inc., is a tuckpointing and masonry restoration company. It employed members of the Chicago Area Pointing, Cleaning and Caulking Industry Union, Local 52. Pursuant to a collective bargaining agreement with the Union, Algozine was required to submit contributions to three employee benefit funds on behalf of employees who performed work covered by the CBA: the Welfare Fund; the Pension Fund; and the Annuity Fund. The Funds are multi-employer benefit funds, as defined by 29 U.S.C. § 1002(2), (3), and (37); they are administered pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). This case arose when Algozine fell behind on its contributions to the Funds and, on November 10, 2016, filed a Chapter 11 bankruptcy petition.

On March 8, 2017, the Funds filed separate proofs of claims under section 507(a)(5) for Algozine's unpaid contributions on behalf of fifteen employees each for the Welfare and Pension Funds and thirteen employees for the Annuity Fund. The Welfare Fund sought $65,658.83 (Claim 19), the Pension Fund sought $56,057.90 (Claim 20), and the Annuity Fund sought $34,621.36 (Claim 21), for a total of $156,338.09. Algozine objected to these calculations. It gave two reasons for its position that the total should be reduced from

$156,338.09 to $5,556.34. First, it contended, the Funds had not accounted for payments made by Algozine or third parties within the 180-day period preceding the bankruptcy petition. Amounts received by an employer or third party are generally applied to the employer's oldest delinquencies. In the interest of resolution, the Funds amended their proofs of claims to account for those payments. That brought its demand for priority treatment down to $21,334.30 (Welfare Fund), $18,453.40 (Pension Fund), and $11,607.16 (Annuity Fund) for a total of $51,394.86.

Algozine's second objection accounts for the nearly tenfold difference between the parties that remained after the first adjustment, and is the subject of this appeal. Algozine argues that the Funds erred by applying the priority cap that appears in section 507(a)(5) to each individual Fund's claims rather than the Funds' aggregate claims. The Funds insist that section 507(a)(5) does not require assessing distinct benefit plans collectively.

The bankruptcy court agreed with the Funds, as did the district court. In reviewing the district court's decision to affirm the bankruptcy court, we review questions of law *de novo* and findings of fact for clear error. *In re: ABC-NACO, Inc.*, 483 F.3d 470, 472 (7th Cir. 2007). Because the text of section 507(a)(5) unambiguously supports the conclusions those courts reached, we affirm.

## II

When interpreting a statute, we look first to the statutory language. *United States v. Balint*, 201 F.3d 928, 932 (7th Cir. 2000). When the language is plain we enforce it without

further ado. Other tools come into play if it is ambiguous, but they are unnecessary in the case before us.

At the time of this lawsuit, Section 507(a) afforded priority status to:

> **(5)** Fifth, allowed unsecured claims for contributions to an employee benefit plan—
>
> > **(A)** arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
> >
> > **(B)** for each such plan, to the extent of—
> >
> > > **(i)** the number of employees covered by each such plan multiplied by [$12,850]; less
> > >
> > > **(ii)** the aggregate amount paid to such employees under [507(a)(4), which covers unpaid wages and similar items], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

The relevant dollar amounts found in the brackets are derived from section 104 of the Bankruptcy Code, which provides that "[o]n April 1, 1998, and at each 3-year interval ending on April 1 thereafter, each dollar amount in effect under … 507(a) … shall be adjusted[.]" 11 U.S.C. § 104. Effective April 1, 2019, priority expenses and claims under section 507(a)(4) and (a)(5)(B)(i) were increased from $12,850 to $13,650, but $12,850 is the relevant amount for this appeal. *Id*.

Despite Algozine's best efforts to muddy the waters, section 507(a)(5) is straightforward. It allows "each such" employee benefit plan to file priority claims for services rendered

within the applicable period. The priority cap is determined by multiplying the number of employees covered by "each such plan" by $12,850. From that number, the plan must subtract the aggregate amount paid under section 507(a)(4) in addition to payments made to any other employee benefit plan. The equation looks like this:

Priority cap = [(# of employees) x $12,850] − [(amount of § 507(a)(4) claims) + (amount paid to any other employee benefit plan)]

None of Algozine's employees made claims under section 507(a)(4), and so we disregard that variable. The net result, as the following calculations show, was that each Funds' individual priority claims were well within section 507(a)(5)(B)'s limitation.

Welfare Fund Priority Cap:

Claimed amount: **$21,334.30**

Statutory cap: **$162,689.44** [15 employees x $12,850 ($192,750)] − [($18,453.40 to Pension Fund) + ($11,607.16 to Annuity Fund)]

Pension Fund Priority Cap:

Claimed amount: **$18,453.40**

Statutory cap: **$159,808.54** [15 employees x $12,850 ($192,750)] − [($21,334.30 to Welfare Fund) + ($11,607.16 to Annuity Fund)]

Annuity Fund Priority Cap:

Claimed amount: **$11,607.16**

Statutory cap: **$127,262.30** [13 employees x $12,850 ($167,050)] – [($21,334.30 to Welfare Fund) + ($18,453.40 to Pension Fund)]

As the Bankruptcy Court observed, section 507(a)(5) "clearly contemplates that, in a single bankruptcy case, more than one 'employee benefit plan' may file a claim, *i.e.* 'claims for contributions' and that the priority limit set forth therein applies to 'each such plan'; which, could only refer to – *each* claim that is filed in the case by, or on behalf of, an employee benefit plan." We have nothing to add to that reasoning.

There is one additional issue on appeal. Algozine argues that some employees who received benefits from the Funds did not render services within the applicable period and thus did not work enough hours to be included in the Funds' priority claims. This argument was waived. At a bankruptcy hearing on September 13, 2018, the parties stipulated that $51,394.86 is the correct priority amount under the Funds' view of section 507(a)(5) and that $5,556.34 is the correct priority amount under Algozine's view. For what it's worth, we find no indication that section 507(a)(5) is tied to actual hours worked by each individual employee. Just the opposite: "[a] plain reading of § 507(a)(5) demonstrates that it provides an aggregate limit on recovery under that provision[,]" tied to the *total* number of employees. *In re Consolidated Freightways Corp. of Delaware*, 564 F.3d 1161 (9th Cir. 2009); see 11 U.S.C. § 507(a)(5)(B)(1) (*number* of employees, not hours worked, multiplied by $12,850).

We AFFIRM the judgment of the district court.